EARLE et al. v. WANAMAKER et al.

(Circuit Court, E. D. Pennsylvania. May 23, 1898.)

1. PATENTS—PRESUMPTION FROM ISSUANCE.
   While ordinarily the presumption of validity from the issuance of a patent is entitled to some weight, yet very little, if any, effect should be given to it where the application was repeatedly rejected as exhibiting nothing new, and was finally obtained apparently by mere persistence of the applicant, and without any reason given for a change of views by the patent office.

2. SAME—IMPROVEMENTS IN CUFFS.
   The Earle patent, No. 533,408, for improvements in cuffs, consisting in overlapping the band by the body portion along its connecting edge, whereby the band is alleged to stiffen the body portion, and hold the ends in firm and even relation to each other, is void for want of novelty and invention.

This was a suit in equity for alleged infringement of a patent for an improvement in cuffs.

Dickerson & Brown, for complainants.
Strawbridge & Taylor, for respondents.

BUTLER, District Judge. The suit is for infringement of letters patent No. 533,408, for improvement in cuffs, dated January 29, 1895. The invention and claim are stated as follows:

My invention relates to cuffs, and has for its object to improve the construction thereof, and especially that class of cuffs which are adapted to be used in connection with link buttons, and it consists in a cuff having the features of construction hereinafter set forth.

I have ascertained by experiment that the ends of the cuff (especially where they are joined together by link buttons) will lose a portion of the support of the band, when the contact between the connecting edges of the band and body portion of the cuff is thus broken, and to remedy this fault I overlap the band by the body portion, along its connecting edge where such contact is broken. In this way the overlapped edges abutting against the band prevent the ends from bending inward, while the band acts to stiffen that portion of the body portion and to hold the ends in firm, even relation to each other. It is also evident in all cases that the width of the band will not encroach upon the width of the body portion at its ends. Therefore without narrowing the body portion at its ends, a wide band may be used, which is a very desirable feature, as it aids in holding firmly the cuff on the wristband. The cuff will also present a more attractive appearance than when there is a space between the band and the body portion of the cuff, as must occur where the body portion does not overlap the band.

In the accompanying drawings, Figure 1 is a front view of the cuff em-

bodying my invention; Figs. 2 and 3, side and bottom views respectively of the same, and Fig. 4 an inside view of the same in a reversible cuff.

Similar letters of reference designate corresponding parts in all the figures.

A designates the bottom portion or band of the cuff; B, the body portion or remaining portion of the cuff; CC, points on the body portion of the cuff where its attachment to the band ceases; D, that portion of the body portion of the cuff overlapping but not connected to the band.

What I claim as my invention, and desire to secure by letters patent is—

A cuff comprising a body portion and a band portion, one edge of the body portion overlapping the band portion throughout the length of the body portion, and the band portion projecting beyond the body portion and being secured thereto except for a short distance at each end, substantially as described.

In testimony whereof I have signed my name to this specification in the presence of two subscribing witnesses.

Cuffs and collars are nearly related as articles of merchandise, are of the same character, constitute a single class of manufacture, and should therefore be treated as belonging to the same art.

At the date of the patent, cuffs and collars of nearly every conceivable shape and description were in common use.

After a careful examination of the subject, and comparison of the complainants' cuffs with those in prior use, I am satisfied that the claim of their patent does not embrace anything substantially new, and that their cuffs do not differ materially, even in form from those previously in use.

I will not discuss the subject, but will refer to the testimony of the respondents' expert, Mr. Brown, for a comparison of the cuffs in question with those formerly made and worn. I would but waste time by restating or enlarging on what he has said. It is urged that these cuffs have supplanted all others of their kind; that they have had great success in the market; while the others have not. There is however, no evidence of such supplanting. There is evidence that these cuffs have been sold extensively, but no evidence that the others have not. If they have not, the duty of showing it rested on the complainants; certainly as much as it did upon the respondents to show the contrary. The success, and extent of sales, of such articles depends however, so much on the efforts and enterprise of those interested in and managing the business, that the measure of success and extent of sales is not always a reliable test of merit.

Some weight should ordinarily be given to the action of the patent office in granting letters. In this instance however, very little if any should be accorded.

The application was repeatedly rejected on the ground that it exhibited nothing new; and the patent was finally obtained, apparently, through mere persistence of the applicant, and his attorneys.

The following letters taken from the file-wrapper, show the judgment of the office after repeated examinations:

The ordinary link cuff has its button-hole tabs, or in other words, the tabs by means of which it is secured to the shirt of the wearer, separated from the body of the cuff by means of slits, angled or otherwise. In view of this state of the art there is no invention disclosed in this application, especially in view of the fact that it is common to secure the body portion of a collar to its band by overlapping and sewing, see patent to Wilson, 8, 169, Reis. Apr. 9, 1878, collars & cuffs.

The claims are therefore rejected. Chapman.

The claims of this application have been further considered in connection with the communication of the 3rd instant.

The claims, however, are a second time rejected upon the references of record and for the reasons given in last office letter. Chapman.

Replying to applicant's communication of the 17th instant it is observed that the link cuff referred to in the previous office letters as anticipating applicant's invention comprises a body portion and a band portion secured together, the band portion having projecting button-hole tabs to engage a button on the wrist-band. The body portion and the band portion are separated at their juncture, the body portion being cut away and for a short distance along the upper edge of the band being free therefrom, or in other words, not stitched thereto, whereby there is a space for the link button at the adjoining edges of the body portion. This is the ordinary link cuff of commerce and such cuffs have been worn by the assistant examiner in charge of this application for the past four years.

P. B. Pierce, Examiner. Chapman, Asst. Exr.

Applicant's communication of the 3rd instant has been incorporated. It is observed that the said communication is directed to the cuff shown. The claims, however, which have been a second time rejected, are broad in terms and are fully anticipated in the state of the art of record.

In this connection applicant's attention is invited to the following patents:

Norton, 253,750, Feb. 14, 1882, collars and cuffs.

Averill, 186,517, Jan. 23, 1877, collars and cuffs.

These patents show a body portion and a band portion, the same being overlapped and the band portion having projecting tabs. These references are merely cumulative to the state of the art already of record. Chapman.

No reason is assigned for the subsequent change of judgment. The applicants urged very strenuously, that the ends of their cuffs are supported by the band, the cuff stiffened and its ends held in relation to each other, more effectually, than in any cuffs previously made; and the statement was very earnestly urged upon me. I do not understand why the office should have accorded it more weight at the end of the struggle than at the beginning. It does not appear to me to be entitled to any weight—First because it does not seem to be (materially) true, and second because if true the trifling structural change necessary to secure the alleged stiffening and support, referred to, would not involve the exercise of inventive genius, of even the lowest order.

The bill must be dismissed with costs, and a decree may be prepared accordingly.