## WAY v. McCLARIN.

(Circuit Court, E. D. Pennsylvania. January 18, 1899.)

No. 28.

1. PATENTS—INVENTION.
   Where a manufacturer of sweaters undertook to devise a substitute, for use in bicycle riding, which should be free from the disadvantages of the increased clothing over the shoulders, neck, arms, and stomach, *held*, that there was no invention in devising a chest and neck protector, consisting of a collar fastening at the back, with a flap depending in front, and united to the lower edge of the collar for a portion only of the width of the flap.

2. SAME.
   The Way patent, No. 593,954, for chest and neck protectors, is void for want of patentable invention.

This was a suit in equity by John Howard Way against George D. McClarin for infringement of a patent for chest and neck protectors.

Joseph C. Fraley and Henry N. Paul, Jr., for complainant.
Ernest Howard Hunter, for respondent.

DALLAS, Circuit Judge. The bill in this case charges the defendant with infringement of letters patent No. 593,954, dated November 16, 1897, granted to the complainant, for "chest and neck protectors." The claims involved are as follows:

"(1) A chest and neck protector, comprising a collar and a depending flap, the collar being elastic in the direction of its length, and the upper edge of the flap being united to the lower edge of the collar centrally for a portion of the width of said flap, whereby the latter is free from the collar for a portion of its width at each side of the point of union, and the collar free to be fastened about the neck of the wearer, substantially as described." "(3) A chest and neck protector, comprising an upper or neck portion folded over at its upper edge to form a two-ply collar, and a depending flap, said collar being elastic in the direction of its length, and the upper edge of the flap being united to the lower edge of the collar centrally for a portion of the width of said flap, whereby the latter is free from the collar for a portion of its width at each side of the point of union, and the collar free to be fastened about the neck of the wearer, substantially as described."

The principal question presented is one which frequently arises, and is often perplexing. Did Way, in making the patented article, exercise the faculty of invention, or merely the skill of an artisan? He says in his testimony that he had been manufacturing "sweaters" for some years, and that he had worn them himself when riding a

bicycle, but was dissatisfied with them, because they increased his clothing over the shoulders and back, arms and stomach, and that his sales of them had decreased, because they were unsatisfactory to others as well as to himself, and for the same reason. Under these circumstances, he says:

"The idea just then popped into my mind that I could make a garment that would fill the want, and I immediately went to the cutting room, and cut out a garment from the heaviest and stiffest ribbed hosiery fabric that we had, and had a girl crochet the edges and sew it with my directions; and in less than twenty minutes I had the garment complete. After completing it, I found that, or thought that, I really had more in it than I first anticipated, as, after trying it on, I found that it did away with the old objection of the sweater, in sagging down in front under the chin, as the fasteners in the back made the roll of the collar stationary, and gave it no possibility of getting out of shape."

In brief, his testimony is that his object was to produce a garment which would be divested of so much of the sweater as objectionably increased the clothing of the wearer, and that in doing this he incidentally remedied another defect of that garment, namely, the sagging of the collar under the chin. This last-mentioned advantage is not referred to in the patent, but, if it be added to all that is said in the specification with respect to the protector's utility, the total appears to be that it can be readily and quickly put on and taken off; that, though of little bulk and weight, it affords great warmth, and, where only local protection is needed, may "practically take the place of a jersey or sweater, which is cumbersome to carry, and troublesome to put on and off," and the collar of which will sag, while that of the protector will not. It may be conceded that in each and all of these particulars the sweater was faulty, and that the idea that a garment might be made which would be better "adapted for bicyclers' use, or for other athletic exercises," was apposite and felicitous; but the problem to be solved does not relate to this abstract conception, but to its concrete embodiment in the manner described and claimed. That Way was both a user and a manufacturer of sweaters is a coincidence of no significance. If he had been a user only, and had applied to a third person, skilled in making and altering garments, to divest his sweater of its superfluous and undesirable parts, can it be possible that his application must have been in vain, unless the person so applied to chanced also to be endowed with the faculty of invention? To this question, plain common sense appears to dictate the only reasonable answer, which is that it would naturally and at once occur to any manufacturer of such goods, or to a tailor or seamstress, to simply cut off those parts of the sweater which rendered it unsatisfactory, and retain the residue. In doing this no difficulty whatever would be encountered, and the result would be inevitable. No especial power of discernment would be required to distinguish the portion to be discarded, and its removal would leave a complete and perfect article of apparel, in form and general appearance much like others that were already known. It is true that Mr. Way did not actually cut down a sweater, but it is clear that the construction of a sweater was in fact, as well as in presumption of law, well known to him, and was vividly before his mind as he worked upon the piece of fabric from which he made the

first of his protectors. But the sweater was put on by drawing it down over the head, and it was immediately obvious to Way, as it must have been to any one, that this method would not be appropriate to a garment, the collar portion of which would, for about one-half its length, be devoid of any appendage. He therefore adopted the usual means for putting on such reduced or more scanty pieces of dress. He severed the collar at right angles with its length, and provided it with fasteners, so that it would be "free to be fastened about the neck of the wearer." The prior art plainly disclosed this arrangement, and, if it had not, I cannot but believe that it would have spontaneously suggested itself to any man or woman who knew anything at all about contriving and fitting clothing. I attach no importance to the fact that the collar of the protector is better than that of the sweater. This may well be, and yet not be due to invention. "The trifling structural change necessary to secure the alleged stiffening and support referred to would not involve the exercise of inventive genius of even the lowest order." Earle v. Wanamaker, 87 Fed. 740.

I have not overlooked the contention, founded upon the proof, that the "Way Mufflet" has been a commercial success. That fact is quite persuasive of its utility, but it is not, in view of all the circumstances, at all convincing of its patentability. The sweater was felt to be objectionable, but it was still worn, and there was no struggle to devise something to take its place, in which Way alone was successful. The thought occurred to him that a different garment might be advantageously substituted for that commonly worn, and he made one which, upon its merits, aided by his enterprise and management, sold readily and extensively. This, however, is all that he did, and it did not involve invention. The bill will be dismissed, with costs.