### McKloskey *v.* Du Bois and others.

*(Circuit Court, S. D. New York.  April 28, 1881.)*

1. **LETTERS PATENT—PLUMBERS' TRAPS—NOVELTY.**
   Where old and new plumbers'.traps differ only in the particular that the former are cast and the latter are drawn through a die, a patent issued on such new traps is void for want of novelty.

2. **EVIDENCE—JUDICIAL KNOWLEDGE.**
   The court will not take judicial notice of any substantial difference between lead,,or other soft metal suitable for the purpose of making such traps, when cast and when drawn.

In Equity.

*James A. Whitney*, for plaintiff.

*Peter Van Antwerp* and *Rodney Mason*, for defendants.

WHEELER, D. J.   This case rests upon letters patent No. 220,767, issued to the orator and purporting to be for an improvement in soft-metal traps. Several questions arise upon the defences made, and among them one upon the patent itself, as to whether it covers any patentable invention, or any invention at all.

The specification states:

"The object of this invention is to provide what are commonly termed 'plumbers' traps' (which are ordinarily made of lead) of a quality superior to those made before the date of my invention, and at much less expense. The said invention comprises, as a new article of manufacture, a die-drawn seamless soft-metal trap, the same being the trap resulting from the practice of the means and methods herein specified as embraced in my invention—the practice of the process of causing soft metal to issue with variable velocities, or in variable quantities, at opposite sides of an annular die."

Then, what the figures accompanying are, one being a sectional and another a side view of the traps, and the rest views of apparatus to make them; and then that—

" My said invention may be manufactured by any suitable process, means, or apparatus whereby soft metal may be caused to pass in variable quantities or at variable velocities through or from an annular die."

And then describes the apparatus constituting one means by which the trap may be produced, and the mode of production, stating further that—

" The walls of the trap thus formed will be of uniform thickness at the inner and outer sides of the bends or curves," and that it issues from the die " in the form of a pipe of greater or less curvature, and with solid or seamless walls, the outer surfaces of which are more or less marked with longitudinal straitions from end to end of the trap, which latter is thus distinguished from other traps by its peculiar appearance."

The claim is for "a die-drawn seamless trap of soft metal as a new article of manufacture, substantially as herein described." There is nothing further in the patent showing what traps of this sort were in use or known before, or any other advantages of this trap; neither is there anything in the evidence or case in the record showing anything wherein a die-drawn trap is any different from or better than other traps. These traps are simply bends of water pipes, downwards, and then upwards, far enough to hold sufficient water in the bends to fill the bore of the pipes at the lowest point, and prevent the passage of air or gas. It is a part of common knowledge that such traps were made prior to this patent, or invention, of lead, and perhaps of other soft metal, by moulding or casting. Traps so made were in very common use in the drainage of houses in cities. This common knowledge and use courts take judicial notice of in cases of this kind. *Brown* v. *Piper,* 91 U. S. 37; *Terhune* v. *Phillips,* 99 U. S. 592; *Quirolo* v. *Ardito,* 17 Blatchf. 400. It was the duty of the orator to point out in his specification the improvement which he claimed to be his invention. Rev. St. § 4888. He had the right to assume, the same as others had, that notice would be taken of this common knowledge; but he was bound to show what there was beyond that which he claimed to be his. With this burden upon him he cannot justly claim that there are differences or advantages in favor of his which should be presumed to exist beyond what he has specified. The patent must be taken as it reads, in the light of common knowledge, until it is shown to cover more by those who claim it does cover more.

Looking at the old and well-known structure and the patent at the same time, there is nothing different between the old and the new, except that the old is cast or moulded, and the new is drawn through a die. They are to be made of the same material, and are to oper-

ate for the same purpose in precisely the same way. The new are said to be of uniform thickness about the bends, but so are the old; the new are said to be seamless, but the old are solid at the juncture of the moulds; the new are said to be marked with "longitudinal straitions," but these have nothing whatever to do with the quality or operation of the trap. They are merely the inevitable marks of the die. They are said to distinguish in appearance the new from the old, but that would only be the subject of a design patent, if any. The only difference there can be, in reality, is that one is cast and the other is drawn. If there is any substantial difference between lead or other suitable soft metal, when cast, and when wrought or drawn, well enough known to be the subject of judicial notice, the court should doubtless regard that difference. There is a well-known difference between cast iron and wrought iron; but this is not because casting makes the difference. Only iron of the quality of cast iron can be cast. It is not so, or is not commonly known to be so, of lead, or other suitable soft metals. They may be either moulded or wrought or drawn of the same quality, and are apparently of the same quality when done. These old and new traps are therefore alike, in the sense of the patent law. They are of the same material, and accomplish the same result in the same way. The sole difference is that in appearance between the bark-like surface of one and the straited surface of the other. There is nothing between the two to be invented and the patent covers no invention. *Wood Paper Patent*, 23 Wall. 562. However meritorious an invention of the means for making a drawn trap might be, this patent, which, while it describes means, is for the product only, has nothing to rest upon.

The bill is dismissed, with costs.