## KILBOURN KNITTING MACH. CO. v. LIVERIGHT et al.

### SAME v. McCONNELL et al.

(Circuit Court of Appeals, Third Circuit.   November 24, 1908.)

### Nos. 21 and 22.

PATENTS (§ 328*)—NOVELTY—OPENWORK STOCKING.

The Blood patent, No. 743,231, for a machine-knit seamless stocking knit from a single thread in one continuous operation, and having lace work down the front of the leg and over the instep, is void, there being no patentable difference between such stocking and the lace front stockings of the prior art, except in the means or method by which it is made and due to the machine.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 46; Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 159 Fed. 494.

L. P. Whitaker and H. T. Fenton, for appellant.

Frank S. Busser, for appellees.

Before GRAY and BUFFINGTON, Circuit Judges, and CROSS, District Judge.

GRAY, Circuit Judge.   These are appeals from decrees of the circuit Court for the Eastern District of Pennsylvania, in two suits for infringement of letters patent, No. 743,231, granted November 3, 1903, to the appellant, as assignee of George Blood, Junior, for an improvement in seamless hosiery.   Infringement of claim 3 only of the patent in suit is charged in the Liveright & Davidson Case, and claims 3 and 4 only in the Marion Hosiery Mills Case.   These claims are as follows:

"(3) A machine-knit seamless stocking having open or lace work meshes upon the leg of the stocking and down upon the front of the ankle and top of the foot of the stocking, the heel, foot and toe of the stocking, being knit from a single thread, substantially as described.

"(4) A machine-knit seamless stocking knit from a single thread in one continuous operation, the said stocking having lace work upon the front of the leg of the stocking, said lace work extending down upon the ankle and top of the foot of the stocking, substantially as described."

The defenses are, in general, non-patentability and non-infringement.   In the view taken by the court of the first named defense, it is not necessary to differentiate the two cases.   The patentee in his specification says:

"My invention relates to the art of knitting seamless hosiery, in which the leg, heel and foot and toe are knit in one continuous operation in the order named, or in an order the reverse of that just stated.   My improvement more specifically stated is a seamless stocking, formed of a single thread knit in one continuous operation and having its front ornamented with a section or sections of open or lace work extending from the upper part of the leg over the instep and onto the foot of the stocking."

As also stated by the patentee, a form of machine was devised by him for knitting stockings of the improved construction set forth in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the patent in suit, and an application for a patent for this device was filed nearly two years prior to the application for the patent in suit, and it was granted in May, 1901.

The standard types of stockings, as agreed on both sides, old and well known at the date of the patent in suit, were (1) the full fashioned stocking knit on a flat or straight machine and in the form of a flat web, shaped to conform to the human leg and foot when the two edges are brought together after knitting and united either by sewing or looping, thus forming a seam, extending along the bottom of the foot and up the back of the leg; (2) the seamless single feed stocking which is knit upon a circular machine. This stocking is made of a single thread, knit on a circular machine spirally around and around to form a cylindrical leg, thence back and forth to form the heel, thence spirally around and around to form a cylindrical foot of the same diameter or circumference as the leg, and thence back and forth to form the toe pocket, which is united on its upper side to the top of the foot by the interlooping of the adjacent edges; (3) the seamless plural feed stocking is in all respects like the single feed seamless stocking, except that there are two or more threads, instead of one, forming two or more rows of loops or stitches that extend together spirally around and around, in echelon relation to each other, to form a cylindrical leg and foot, these threads being thrown out of action and another single thread thrown into action to form the heel and toe. This stocking is also knitted on a circular machine, the operation of which is essentially the same as that of a machine for knitting single feed stockings; (4) the transfer stocking made partly on one machine and partly on another. The leg is made on a circular machine out of a single thread, or a plurality of threads, and then the whole foot and toe are made, usually of a single thread, on another circular machine, and the two parts united by looping or sewing. The defendant's Liveright & Davidson stocking belongs to this class.

The first of the foregoing types of machine made stocking,—the full fashioned stocking, knit as a flat web on a straight machine, on account of its being fashioned so as to conform, when the two edges are united, to the shape of the leg and foot, is a most desirable, though a more expensive, type than the others. The advantages of the seamless stocking, whether single or plural thread, knitted around and around on a cylindrical machine, are economy in construction and the absence of a possibly uncomfortable seam on the bottom of the foot and back of the leg, but it lacks the advantages of conformity to the shape of the leg and foot. It is desirable, however, by reason of its cheapness.

A short time prior to the date of the patent in suit, straight knit or full fashioned stockings, having lace work down the front of the leg, over the ankle, and top of the foot, had been produced and were being sold in the trade, being much in vogue with low shoes and slippers. Such stockings could always have been made by hand, and doubtless were so made, but as soon as the fashion created the demand, as above stated, there was no difficulty in making stockings with such lace work down the front of the leg and foot of the stocking on a flat web or straight machine. But it was inevitable that, as the fashion became popular, there should arise a demand for a cheaper lace front stocking

than the full fashioned stocking produced on the flat web machine, and that there should be an attempt to apply the lace work to the front of the cheaper seamless stocking made on a circular machine. We therefore find that one Gilbert, who had an old patent for an improvement in circular knitting machines, whereby toe or heel pockets on the knitted tube could be formed automatically, had made cheap lace work stockings, the lace work extending over the instep and top of the foot, by a device attached to his old circular machine. This machine, however, was not a single thread, but the plural thread machine above mentioned, in which three or four threads were knitted around and around in an echelon progression. There was some difficulty, however, owing to the relative position of the plural courses of knitting, in attaching the toe pocket to the foot. This, however, was done by sewing by hand, creating in this way a seam, instead of the seam produced by the automatic interlooping of the stitches of the foot with those of the toe pocket in a single thread machine.

It is admitted, or at least it is indisputable, that there was thus produced by Gilbert, prior to the patent in suit, on his circular plural thread machines, a lace front stocking, generically the same as that theretofore produced on the flat web machines, and generically identical with the lace front stocking of the patent in suit, unless patentably differentiated from the former by being produced on a circular machine, and from the latter by being knit with a plural thread and with the toe pocket united to the top of the foot as above described. We have, therefore, in the prior art, a lace front stocking made on the flat web machine, and a lace front stocking made on a circular plural thread machine, undistinguishable, except as above mentioned, from a stocking made in precise accordance with the patent in suit. It appears from the record, that at the time the lace front full fashioned stocking came into use, Gilbert was a user of plural feed seamless machines only, and therefore sought to adapt those machines to the manufacture of the lace front stocking. It is not an unfair inference from the testimony, that if he had been a user of single feed seamless machines, he would have adapted such machines to the production of the same stocking, which would have been the seamless single feed stocking of the patent in suit.

This statement brings us at once to the consideration of the important question in this case. The patent is for a product, which, for the purposes of this discussion, may be taken as sufficiently described in the fourth claim of the patent in suit, which in substance is "a machine knit seamless stocking knit from a single thread in one continuous operation, having lace work upon the front of the leg, extending down upon the ankle and top of the foot of the stocking." This is broadly the product produced by Gilbert, and can only be distinguished from it by being knitted with a single thread, which enabled the toe pocket to be united to the foot by automatic interlooping of the stitches of the one with the other. But this automatic union of the toe pocket with the foot was characteristic of the old circular machine, plain seamless stocking, and the addition to it of the ornamentation of lace work down the front and over the instep, was due to the function of the particular device combined with the circular ma-

chine, and for which a patent had already been applied for and obtained by the patentee of the patent in suit. As a distinct entity of the stocking making art, it did not differ from other lace front stockings (notably the flat web stocking and the "Gilbert" stocking) of the prior art, except in the means or methods by which it was made. But complainant below urges, with great ingenuity, that the stocking thus produced is of a structural character different from the other lace front stockings referred to, and that this peculiar structural character identifies it as a distinct commercial entity, and as a product or manufacture entitled to patent protection. We do not think so. This alleged structural peculiarity belonged to the plain seamless, machine-knit, singlethread stocking of the prior art, and necessarily was still present in that stocking, when, by the patented attachment to the seamless single thread machine, it was produced with a lace front. Such a peculiarity, attached to every variety of single thread, seamless, machine-made stocking, is not and cannot be made generically descriptive, in a patentable sense, of the stocking of the patent in suit. To call it a structural peculiarity, does not help the case. Whatever it may be called, whether considered separately or in combination with a lace front, it is the result of the machine on which it is made, and is not a product of the inventive faculty. There was no idea or mental concept of such a material entity as this stocking in a patentable sense. The patentable idea or conception, if any, was of a circular seamless machine so added to that it would produce substantially the lace front stocking of the prior art. That there was stamped upon the lace front stocking of the prior art a slight peculiarity of structure, due to the machine on which it was made, does not serve to characterize it or differentiate it from the lace front stocking of the prior art. It can only differentiate it by those structural marks, due to the machine upon which it is made. These are too unsubstantial and accidental to create a new article of manufacture in the sense of the patent law, the production of which involves the exercise of invention or discovery beyond what was necessary to construct the apparatus for its manufacture or production. Collar Co. v. Van Deusen, 23 Wall. 530, 563, 23 L. Ed. 128; McCloskey v. Du Bois (C. C.) 19 Blatchf. 205, 8 Fed. 710.

If a lace front stocking is claimed as a patentable product, when made on a seamless machine with a single thread, in a continuous operation, every other well known form of stocking can be considered a patentable product when so made, which would amount to a practically indefinite extension of the monopoly originally granted by the patent for the seamless stocking. It must be admitted that it is somewhat difficult to properly define in general terms what is or is not a patentable "manufacture," and distinguish it from the mere effect or result of a process or machine. This difficulty possibly arises from what Robinson, in his work on Patents, calls the want of technical language that will clearly express all that the words "new and useful manufacture" in the patent law connotes. But however this may be, the difficulty is best met, as in the interpretation of all statutes, by a close adherence to the ordinary and common sense meaning and usage of the words employed to express the legislative will.

A new and useful product or manufacture must be differentiated from all other articles, by something that is fundamental and radical. In a machine-made, seamless, lace front stocking, we do not find this radical and fundamental differentiation from the subject matter of the patent in suit.

We think the principle upon which this court recently decided the case of Weierman v. Shaw Stocking Co., 85 C. C. A. 222, 157 Fed. 928, is clearly applicable, as found by the court below, to the case now before us. That case dealt with what is popularly called a product patent. It was old in the art to make what was called a split foot stocking; that is, a stocking with the leg and upper part of the foot of one kind of yarn, and the bottom or sole of the foot of another and distinct yarn. Long prior to the patent there in suit, such a stocking had been made from a knitted flat web, in which one half of the sole was knitted on one side of the web, and one half on the other. The web was then united by a steam down the back of the leg and the middle of the sole of the foot, thus making a split foot stocking, in which the upper part of the foot was of one yarn and the sole or bottom of another. The patent in suit was for this same split foot stocking, but made on a tubular machine, so adjusted and adapted as to have the top or upper part of its foot composed of one yarn or set of yarns, and the bottom or sole of the foot composed of another or distinct yarn or set of yarns, the said upper and sole parts being united in the form of a tube, by the reciprocal interloopments of the upper edges of said upper and sole at the sides of the foot. There was thus produced a machine-made seamless split foot stocking.

Adopting the language of the learned judge of the court below:—

"The claim which was there involved will show the similarity of the two. Both stockings, as it will be seen, have the seamless feature, which was not new in either, and neither is the open work lace effect, which is found here, which in one form or another has been long known and practised in the stocking art. As therefore there was nothing patentable in the Shaw Case, in the conception of combining the seamless and the split foot ideas, which were both old, so neither is there anything patentable here, in bringing together in a single stocking structure the seamless and the lace work effect which are in the same position."

We therefore think that the decree of the court below should be affirmed.