## THOMAS A. EDISON, Inc., v. WATERBURY BATTERY CO.

(Circuit Court of Appeals, Second Circuit. January 5, 1923.)

### No. 132.

1. **Patents ⊛⟶328—1,167,499, claim 1, for improvement in primary batteries, held not anticipated and infringed.**

The Holland patent, No. 1,167,499, claim 1, for an improvement in primary batteries the novel feature of which is a ribbed zinc plate, constructed so as to maintain its shape while a greater proportion of the metal is consumed than in ordinary batteries, *held* not anticipated by prior patents or by defendant's prior plate, and also *held* infringed by defendant's later plate, although circular and not flat in form.

2. **Patents ⊛⟶328—1,061,541, claims 1 and 5, for improvements in primary batteries, held invalid.**

The Hudson and Elmes patent, No. 1,061,541, claims 1 and 5, for improvement in primary batteries the distinguishing feature of which is a thin place in the plate which will become a hole in the plate as the latter is eaten away, so as to give warning of the necessity of renewing the plate in a short time, with a raised rim around the thin spot, so that an observer will know where to look for the expected hole, *held* invalid; the means disclosed being so obvious as to show no more than the exercise of mechanical skill.

Appeal from the District Court of the United States for the District of Connecticut.

Suit by Thomas A. Edison, Inc., against the Waterbury Battery Company, for infringement of two patents. From a decree for plaintiff as to the first patent, and in favor of defendant as to the second patent (281 Fed. 254), both parties appeal. Affirmed.

Suit is for alleged infringement of two patents owned by plaintiff, viz. one to Holland, 1,167,499, granted January 11 1916 (claim 1), and that to Hudson and Elmes, 1,061,541, granted May 13, 1913 (claims 1 and 5).

The Holland claim in suit is as follows: "In a primary battery, a substantially homogeneous zinc electrode plate having its edges thickened to prevent reduction in effective area during the operation of the battery, and having strengthening ribs extending from said thickened edges across said plate integrally therewith, substantially as described."

Claim 1 of Hudson's patent states the invention most broadly, thus: "In a primary battery, a positive plate having a depression of small area on the side farthest away from the negative element with which it coacts, for indicating the approaching necessity for renewal, substantially as described."

Both inventors assert that their discoveries relate to improvements in primary batteries, such as show a negative electrode consisting of a plate of oxide of copper or other depolarizing agent, and as a positive electrode a plate or plates of zinc. In both specifications the battery of Dodge (No. 894,487, July 28, 1908) is referred to as the type on which both inventors propose improvements, without, of course, limiting themselves to Dodge's particular design.

The improvements claimed relate to the zinc plate in batteries of the class

---

⊛⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

referred to. Holland's object is to so construct such plates that the battery equipped with his improvement "shall have a higher and more uniform voltage, and a higher discharge rate than have batteries as commonly constructed, without proportionate increase in the amount of material used in the construction of the plate, and shall have increased efficiency and life."

These desirable results Holland proposes to reach by using "a much smaller proportion of zinc in excess of the theoretical required amount," but forming the zinc plate "with an integral flange or rib, or a plurality of ribs upon its surface," and preferentially "with a flange adjacent to its edges on the side adjacent to the copper oxide plate"; the result of which structural method is to make it possible for the body of the plate to be "much thinner than it otherwise must be, to maintain its shape after it has been considerably consumed."

Hudson's specification proposes but one change in the admittedly flat unribbed plate of the prior art, viz. to form "a small depression in the side * * * farthest away from" the copper oxide plate. The depression makes a thin or thinner place in the zinc plate, which will wear away under the expected electrolytic action of the battery before any other part does so, and thus by predetermined correlation of the battery parts, when the thin place is worn through and a hole shows in the zinc, there is afforded an "advance indication to the user of the approaching exhaustion of the plate, so that he may be prepared to renew the same."

Hudson preferred and shows (without limiting himself to that construction) "a small depression (in the zinc) of a circular shape, surrounded with a raised rim for locating the spot which the user should watch for signs of wear."

The usual defenses were interposed and the trial court held the Holland patent valid and infringed, but declared no infringement of that to Hudson. Both parties then appealed.

J. Edgar Bull and George F. Scull, both of New York City, for plaintiff.

Dunn, Goodlett & Massie and C. A. L. Massie, all of New York City, for defendant.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] In respect of the Holland patent, it is not necessary to go at length into the earlier art and its relation to this suit; that labor has been sufficiently performed by the District Court. The question at bar may be thus stated. Recognizing the comparative antiquity of primary batteries having zinc and copper electrodes immersed in electrolite, was it patentable invention to design, mold, or fashion the zinc electrode in the manner disclosed by the patentee?

Holland did not invent a battery. Admittedly he took Dodge's battery and refashioned its zinc in such wise as "to prevent reduction in effective area during the operation of the battery." That was the object of the means which he patented; it was the result of his refashioning. He attained this result for reasons to be briefly stated later, but we note now that his introduction of the above-quoted phrase in the claim does not make the claim any better; nor, on the other hand, does it invalidate. If these words of self-congratulation had been omitted, the result would have been reached just the same and the disclosure would have been just as meritorious.

Holland's concept of invention as fully disclosed is this: The zinc plate of Dodge, and generally speaking the zinc electrode of com-

merce was a smooth unribbed plane of zinc of uniform thickness when new. During battery service, zinc is, so to speak, the fuel of the battery; it is consumed by electrolytic action. For metallurgical reasons it wears away unevenly, and experience expects it in time to pit and develop holes. Thus the plate increasingly becomes structurally weaker and (as no current is propagated from a hole) it also decreases in effective area. Furthermore, for chemical or electrical reasons, obscure, but known by results, this wearing away is apt to be especially marked at the edges of the plate.

Theoretically it is possible to calculate with exactitude the amount of zinc that should be consumed during the predetermined life in ampere hours of any given battery, and theoretically, therefore, a battery maker should provide a zinc plate of just sufficient weight and substance to economically furnish fuel for the calculated battery life. Practically, however, owing to imperfections in metal, and to the fact that zinc is not consumed as if by pealing off layers of uniform thickness from the plate surface, it is always necessary to put in an electrode of that metal, far more material than is theoretically sufficient to furnish fuel during the battery life. It is testified that as much as from 60 to 70 per cent. of excess metal is added.

As a partially consumed plate does not furnish the same area for electrolytic action, it follows that in batteries which (during cold weather especially) may be called on for their extreme calculated current, the absence of "effective area" produces lack of effective or calculated power. Holland bettered this situation by making a plate that looks somewhat like a paneled door with a thickened exterior edge and interior ribs or strengthening bars, the panels being much thinner than in the smooth ribbed plate. By this means he produced a plate which, being flanged on its edges, would better withstand electrolytic wear in those parts which especially diminished effective area. His ribs gave structural strength, and therefore his panels could be thinned; the whole being in weight much nearer the theoretical zinc requirements for predetermined battery life.

In result, we find Holland's plate is economical in that the excess over theoretical zinc requirement is smaller, and the maintenance of effective area better than in the prior plain and unribbed zinc electrode. This was, we think, invention, and very plainly so.

As to the prior art, we think defendant's so-called "W. B. Co." plates so much the best reference that none other need be mentioned. We assume (but do not find) that before Holland's effective date this defendant (or its predecessors) made plates upon which were placed as a sort of trade-mark the letters (in a kind of monogram) "W. B. Co." This required additional zinc, and the formation of the letters produced what might have served as strengthening ribs, if any were needed; but we agree with the court below that the only purpose of this monogram addition was to identify or advertise defendant's wares. There was no reduction of zinc used; on the contrary, there was probably addition. Consequently what was done did not accomplish Holland's result. The "W. B. Co." plates do not infringe, and therefore would not have anticipated, if earlier. Nor did they so in-

struct the man skilled in the art as to leave no room for invention in respect of Holland's concept and accomplishment.

As to infringement, it is admittedly true that the article decreed to infringe is not a flat plate, but a circular one. It is, however, ribbed, strengthened, and flanged in the manner and for the purposes disclosed by Holland.

In this court especial emphasis is laid on the invention of Thomson (866,748) as showing, if not invalidity, certainly noninfringement. The use of Thomson's device on this appeal is a good example of the ease with which mere form tends to assume undue importance. Thomson shows a circular plate somewhat like defendant's. He also discloses and claims what he calls a "lip" upon each of the vertical edges of his circular zinc; that is, he turned back the zinc plate upon itself, and he did it "to preserve the life of battery zincs and to save at least half their value, which, as at present used, is wasted." But examination of the patent shows that Thomson's sole concept, his desired result, was to prevent in a *partially* submerged zinc the more rapid wearing away of the plate at the surface of the electrolite. Let it be assumed that Thomson prevented his plate from being eaten in two or severed at the electrolytic surface, as soon as it otherwise would have been, and that he did so by means of his turned-over lip. But this is a different thing from changing the structure of the entire plate in such wise as to present to electrolytic action an entire plate surface thickened and thinned at the places where each would be most serviceable for maintaining both effective area and structural strength.

[2] As to the Hudson patent, we entirely agree with the court below that no infringement is shown; but we are also of opinion that the patent itself is invalid. Starting with the knowledge that in any zinc plate holes would certainly appear in time, this patentee (at most and best) deliberately made a weak spot—i. e., a thin place—in the plate of the prior art. He thinks that zincs "wear away during electrolytic action quite evenly"; therefore he made a thin place, how thin he does not say, but thin enough so that, when it wore through, the user would be advised that the plate would "have to be renewed shortly, say in from two or four weeks' time." He then put a raised rim around the thin spot, so that an observer would know where to look for the expected hole.

Assuming this method of observation as desirable, the means disclosed are so obvious that we hold them, as matter of fact, no more than the exercising of mechanical skill. As neither appellant has succeeded, the decree is affirmed, without costs.