**SCOTT & WILLIAMS, Inc., v. ARISTO HOSIERY CO., Inc.**

(Circuit Court of Appeals, Second Circuit. May 18, 1925.)

No. 314.

1. Patents ⚙➡328—1,233,714, for seamless stocking having structural variation, imitative of seam in full-fashioned stocking, held invalid.

Scott & Williams, patent, No. 1,233,714, July 17, 1917, consisting of seamless stocking having structural variation in knit fabric at back, imitative of seam at back of leg of full-fashioned stocking, which added only to salability of article, *held* invalid.

2. Patents ⚙➡16—Protection of patent not intended for those conferring no other benefit than an opportunity to make article more salable.

Protection of patent not intended for those who conferred no other benefit than an opportunity for making article more salable.

3. Patents ⚙➡37—Production of imitative result, adding only to salability of article, is not patentable.

To produce imitative result is not patentable, and attainment by imitation of attractiveness of shape or form, which adds only to salability of article, is not patentable invention.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Scott & Williams, Inc., against the Aristo Hosiery Company, Inc., for infringement of patent No. 1,233,714, issued July 17, 1917, on an application filed November 2, 1915. Decree for defendant (300 F. 622), and plaintiff appeals. Affirmed.

See, also, 266 F. 382.

Howson & Howson, of New York City (Charles Neave and Hubert Howson, both of New York City, of counsel), for appellant.

Emery, Booth, Janney & Varney, of New York City (Frederick L. Emery, of New York City, and Irving U. Townsend, of Boston, Mass., of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. [1] This suit for infringement of a patent for a seamless stocking, has four claims which are as follows:

"1. A seamless stocking having therein at the back of the leg a structural variation of the knit fabric of which it is composed, imitating the narrowing marks occurring in seamed or other narrowed stockings.

"2. A seamless stocking having a tapered leg having the same number of needle wales therein throughout and separated structural marks occurring in the same needle wale on each side of and near the central back line of the stocking at the tapered portion only thereof.

"3. A seamless stocking having a tapered leg, a mock seam at the back of the leg, and separated marks imitating transferred narrowings at either side of the mock seam in said tapered portion.

"4. A seamless stocking having a tapered leg and tuck stitch marks separated in the direction of the length of the stocking occurring in the same needle wale on each side of the central back line of the stocking at the tapered portion."

The patentee says that his invention relates to a circular knit or seamless stocking having therein an imitation of some of the characteristic appearances of the straight or old-fashioned and seamed stockings. He points out that in recent years it has been found desirable to have a half wale circular knit seamless stocking with an imitation seam at the back of the leg, and he says:

"Unthinking purchasers still depend upon superficial characteristics of the once superior sort of stocking to indicate to them a desirable article of purchase, without examining the stocking for the other structural features upon which a more intelligent choice might be based. Such persons usually prefer, when they can be induced to make a decision on their respective merits, that type of stocking having no seam at the back, which has manifest advantages as an article of wear. The existence of a large body of

prejudice of this sort in the minds of the public unfairly militates against the sale of the circular knit articles of hosiery."

And he says the existence of prejudice of this sort in the minds of the public militates against the sale of circular knit articles of hosiery. He says the purpose of his invention is to provide in such hosiery an imitation of the superficial appearance of the stockings of the other type, so that circular knit stockings, made according to the invention, will not be unfairly associated in the minds of purchasers with a crude and inferior class of goods, but will be taken upon their relative merits. A stocking made under the patent in suit is constructed by having the same knit of needle wales throughout, where the fabric, by reason of the changes in length of stitch or the kind of yarn or otherwise, is made permanently wider at the calf of the leg than at the ankle, the fabric tapering from one width to the other width. At the back of the leg and at the location of this taper, a fixed distance from and on each side of the central back needle wale on which the stocking is folded forms during manufacture imitation marks of a different texture from the remainder of the fabric by transferring loops from one needle wale to an adjacent needle wale, or by making a drop stitch or group of drop stitches or by a tuck stitch extending over two or more courses.

In the imitation, there is formed a mark, similar in construction, at the central wales at the back of the leg, by omitting a needle knitting process. When a garment is so constructed, it is but a seamless stocking in all substantial respects, except there is added thereto what is called a structural variation, for the sole purpose of providing a designed effect in the stocking; that is, an imitation of the superficial appearance of stockings of the full-fashioned type. In this accomplishment, the inventor decorates an old article of manufacture, or dresses it to present an appearance to the eye that is not original as such; but he does not change or improve the structure or the utility of the article. The appearance is imitation, and thus, through it, wins popularity and makes the article more salable.

This record justifies the claim that the full-fashioned stocking is superior to the seamless stocking. The testimony of the retailers, jobbers, and manufacturers of seamless stockings are all to the effect that they are not the equal of the full-fashioned stocking as a desirable article of wear, because they do not possess the qualities of fit that make it a desirable article that a full-fashioned stocking has been recognized to be. At best, the seamless stocking has imitation marks for the purpose of deception, and the idea prevails that with such imitation the article is more salable.

[2] But such accomplishment does not create a new useful discovery or invention, and it was not the intention of Congress to grant protection to those who confer no other benefit to the public than an opportunity for making the article more salable. Rickard v. Du Bon, 103 F. 868, 43 C. C. A. 360; Kilbourn Knitting Machine Co. v. Liveright, 165 F. 902, 91 C. C. A. 580. Much is made of the claim that there has been a great commercial success of the seamless stocking so made, and it is apparent that this great demand is thrown in the balance in favor of the validity of the patent. But the changes of fashion have had all to do with this. When women's skirts were long and full, exposing only a slight portion of the ankle above the heel of the shoe, the mock seam furnished the desired illusion; but with the shorter and narrower skirt and the exposure of a woman's leg, the desirability of making the seamless stocking as a full-fashioned stocking in appearance came very much in vogue. The mock seam at the back no longer served the desired imitative effect in leading the public to believe the better quality and more expensive full-fashioned stocking was being worn, when the style changed so that shorter and narrower skirts were used.

[3] The presence or absence of narrowing marks that invariably accompanied the genuine full-fashioned stocking was instantly revealed when the skirt slipped well above the ankle. Mere novelty or attractiveness of shape or form by imitation only does not present that technical ingenuity to rise to patentable invention. Harmon Paper Co. v. Prager (C. C. A.) 287 F. 841. What was accomplished here was a concept of imitation. It makes little difference how the imitation is produced. There is no exposition of means. What the patentee did here was to, by imitation, give his stockings the appearance of full-fashioned stockings, and for that he claims a monopoly. To produce an imitative result is not patentable. There is lacking the means of producing the result. Simplex v. Renfrew, 250 F. 863, 163 C. C. A. 177. If the means were at hand for producing the imitation, there was no field left for invention so far as the imitat-

ed article itself was concerned. Rubber Tip Pencil Co. v. Howard, 20 Wall. 498, 22 L. Ed. 410; Electric Vacuum Cleaner Co. v. Jorgensen (C. C. A.) 290 F. 184; Thomas A. Edison, Inc., v. Waterbury Battery Co. (C. C. A.) 287 F. 320; Way v. McClarin (C. C.) 91 F. 663.

For these reasons, we think the decree below was properly entered.

Decree affirmed.