**JUICY WHIP, INC., Plaintiff–
Appellant,**

v.

**ORANGE BANG, INC. and Unique
Beverage Dispensers, Inc.,
Defendants–Appellees.**

No. 98–1379.

United States Court of Appeals,
Federal Circuit.

Aug. 6, 1999.

Ernie L. Brooks, Brooks & Kushman, P.C., Southfield, Michigan, argued for plaintiff-appellant. With him on the brief were Frank A. Angileri, William G. Abbatt, and John E. Nemazi.

Michael A. Painter, Isaacman, Kaufman & Painter, Beverly Hills, California, argued for defendants-appellees.

Before RICH,[1] SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

The district court in this case held a patent invalid for lack of utility on the ground that the patented invention was designed to deceive customers by imitating another product and thereby increasing sales of a particular good. We reverse and remand.

## I

Juicy Whip, Inc., is the assignee of United States Patent No. 5,575,405, which is entitled "Post–Mix Beverage Dispenser With an Associated Simulated Display of Beverage." A "post-mix" beverage dispenser stores beverage syrup concentrate and water in separate locations until the beverage is ready to be dispensed. The syrup and water are mixed together immediately before the beverage is dispensed, which is usually after the consumer requests the beverage. In contrast, in a "pre-mix" beverage dispenser, the syrup concentrate and water are pre-mixed and the beverage is stored in a display reservoir bowl until it is ready to be dispensed. The display bowl is said to stimulate impulse buying by providing the consumer with a visual beverage display. A pre-mix display bowl, however, has a limited capacity and is subject to contamination by bacteria. It therefore must be refilled and cleaned frequently.

The invention claimed in the '405 patent is a post-mix beverage dispenser that is designed to look like a pre-mix beverage dispenser. The claims require the post-mix dispenser to have a transparent bowl that is filled with a fluid that simulates the appearance of the dispensed beverage and is resistant to bacterial growth. The claims also require that the dispenser create the visual impression that the bowl is the principal source of the dispensed beverage, although in fact the beverage is mixed immediately before it is dispensed, as in conventional post-mix dispensers.

Claim 1 is representative of the claims at issue. It reads as follows:

> In a post-mix beverage dispenser of the type having an outlet for discharging beverage components in predetermined proportions to provide a serving of dispensed beverage, the improvement which comprises:
>
> a transparent bowl having no fluid connection with the outlet and visibly containing a quantity of fluid;
>
> said fluid being resistant to organic growth and simulating the appearance of the dispensed beverage;
>
> said bowl being positioned relative to the outlet to create the visual impression

1. Circuit Judge Rich heard oral argument in this case but died on June 9, 1999. This case was decided by the remaining judges in accordance with Federal Circuit Rule 47.11.

that said bowl is the reservoir and principal source of the dispensed beverage from the outlet; and

said bowl and said quantity of fluid visible within said bowl cooperating to create the visual impression that multiple servings of the dispensed beverage are stored within said bowl.

Juicy Whip sued defendants Orange Bang, Inc., and Unique Beverage Dispensers, Inc., (collectively, "Orange Bang") in the United States District Court for the Central District of California, alleging that they were infringing the claims of the '405 patent. Orange Bang moved for summary judgment of invalidity, and the district court granted Orange Bang's motion on the ground that the invention lacked utility and thus was unpatentable under 35 U.S.C. § 101.

The court concluded that the invention lacked utility because its purpose was to increase sales by deception, i.e., through imitation of another product. The court explained that the purpose of the invention "is to create an illusion, whereby customers believe that the fluid contained in the bowl is the actual beverage that they are receiving, when of course it is not." Although the court acknowledged Juicy Whip's argument that the invention provides an accurate representation of the dispensed beverage for the consumer's benefit while eliminating the need for retailers to clean their display bowls, the court concluded that those claimed reasons for the patent's utility "are not independent of its deceptive purpose, and are thus insufficient to raise a disputed factual issue to present to a jury." The court further held that the invention lacked utility because it "improves the prior art only to the extent that it increases the salability of beverages dispensed from post-mix dispensers"; an invention lacks utility, the court stated, if it confers no benefit to the public other than the opportunity for mak-

ing a product more salable. Finally, the court ruled that the invention lacked utility because it "is merely an imitation of the pre-mix dispenser," and thus does not constitute a new and useful machine.

## II

Section 101 of the Patent Act of 1952, 35 U.S.C. § 101, provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof," may obtain a patent on the invention or discovery. The threshold of utility is not high: An invention is "useful" under section 101 if it is capable of providing some identifiable benefit. See Brenner v. Manson, 383 U.S. 519, 534, 86 S.Ct. 1033, 16 L.Ed.2d 69 (1966); Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1571 (Fed.Cir.1992) ("To violate § 101 the claimed device must be totally incapable of achieving a useful result"); Fuller v. Berger, 120 F. 274, 275 (7th Cir.1903) (test for utility is whether invention "is incapable of serving any beneficial end").

To be sure, since Justice Story's opinion in Lowell v. Lewis, 15 F. Cas. 1018 (C.C.D.Mass.1817), it has been stated that inventions that are "injurious to the well-being, good policy, or sound morals of society" are unpatentable. As examples of such inventions, Justice Story listed "a new invention to poison people, or to promote debauchery, or to facilitate private assassination." Id. at 1019. Courts have continued to recite Justice Story's formulation, see Tol-O-Matic, Inc. v. Proma Produkt–Und Marketing Gesellschaft m.b.H., 945 F.2d 1546, 1552–53, 20 USPQ2d 1332, 1338 (Fed.Cir.1991); In re Nelson, 47 C.C.P.A. 1031, 280 F.2d 172, 178–79, 126 USPQ 242, 249 (CCPA 1960), but the principle that inventions are invalid if they are principally designed to serve immoral or illegal purposes has not been applied

broadly in recent years. For example, years ago courts invalidated patents on gambling devices on the ground that they were immoral, *see e.g., Brewer v. Lichtenstein,* 278 F. 512 (7th Cir.1922); *Schultze v. Holtz,* 82 F. 448 (N.D.Cal.1897); *National Automatic Device Co. v. Lloyd,* 40 F. 89 (N.D.Ill.1889), but that is no longer the law, *see In re Murphy,* 200 USPQ 801 (PTO Bd.App.1977).

■ In holding the patent in this case invalid for lack of utility, the district court relied on two Second Circuit cases dating from the early years of this century, *Rickard v. Du Bon,* 103 F. 868 (2d Cir.1900), and *Scott & Williams v. Aristo Hosiery Co.,* 7 F.2d 1003 (2d Cir.1925). In the *Rickard* case, the court held invalid a patent on a process for treating tobacco plants to make their leaves appear spotted. At the time of the invention, according to the court, cigar smokers considered cigars with spotted wrappers to be of superior quality, and the invention was designed to make unspotted tobacco leaves appear to be of the spotted—and thus more desirable—type. The court noted that the invention did not promote the burning quality of the leaf or improve its quality in any way; "the only effect, if not the only object, of such treatment, is to spot the tobacco, and counterfeit the leaf spotted by natural causes." *Id.* at 869.

The *Aristo Hosiery* case concerned a patent claiming a seamless stocking with a structure on the back of the stocking that imitated a seamed stocking. The imitation was commercially useful because at the time of the invention many consumers regarded seams in stockings as an indication of higher quality. The court noted that the imitation seam did not "change or improve the structure or the utility of the article," and that the record in the case justified the conclusion that true seamed stockings were superior to the seamless stockings that were the subject of the patent. *See Aristo Hosiery,* 7 F.2d at 1004. "At best," the court stated, "the seamless stocking has imitation marks for the purposes of deception, and the idea prevails that with such imitation the article is more salable." *Id.* That was not enough, the court concluded, to render the invention patentable.

■ We decline to follow *Rickard* and *Aristo Hosiery,* as we do not regard them as representing the correct view of the doctrine of utility under the Patent Act of 1952. The fact that one product can be altered to make it look like another is in itself a specific benefit sufficient to satisfy the statutory requirement of utility.

It is not at all unusual for a product to be designed to appear to viewers to be something it is not. For example, cubic zirconium is designed to simulate a diamond, imitation gold leaf is designed to imitate real gold leaf, synthetic fabrics are designed to simulate expensive natural fabrics, and imitation leather is designed to look like real leather. In each case, the invention of the product or process that makes such imitation possible has "utility" within the meaning of the patent statute, and indeed there are numerous patents directed toward making one product imitate another. *See, e.g.,* U.S. Pat. No. 5,762,968 (method for producing imitation grill marks on food without using heat); U.S. Pat. No. 5,899,038 (laminated flooring imitating wood); U.S. Pat. No. 5,571,545 (imitation hamburger). Much of the value of such products resides in the fact that they appear to be something they are not. Thus, in this case the claimed post-mix dispenser meets the statutory requirement of utility by embodying the features of a post-mix dispenser while imitating the visual appearance of a pre-mix dispenser.

The fact that customers may believe they are receiving fluid directly from the display tank does not deprive the invention of utility. Orange Bang has not argued that it is unlawful to display a representation of the beverage in the manner that

fluid is displayed in the reservoir of the invention, even though the fluid is not what the customer will actually receive. Moreover, even if the use of a reservoir containing fluid that is not dispensed is considered deceptive, that is not by itself sufficient to render the invention unpatentable. The requirement of "utility" in patent law is not a directive to the Patent and Trademark Office or the courts to serve as arbiters of deceptive trade practices. Other agencies, such as the Federal Trade Commission and the Food and Drug Administration, are assigned the task of protecting consumers from fraud and deception in the sale of food products. *Cf. In re Watson,* 517 F.2d 465, 474–76, 186 USPQ 11, 19 (CCPA 1975) (stating that it is not the province of the Patent Office to determine, under section 101, whether drugs are safe). As the Supreme Court put the point more generally, "Congress never intended that the patent laws should displace the police powers of the States, meaning by that term those powers by which the health, good order, peace and general welfare of the community are promoted." *Webber v. Virginia,* 103 U.S. (13 Otto) 344, 347–48, 26 L.Ed. 565 (1880).

Of course, Congress is free to declare particular types of inventions unpatentable for a variety of reasons, including deceptiveness. *Cf.* 42 U.S.C. § 2181(a) (exempting from patent protection inventions useful solely in connection with special nuclear material or atomic weapons). Until such time as Congress does so, however, we find no basis in section 101 to hold that inventions can be ruled unpatentable for lack of utility simply because they have the capacity to fool some members of the public. The district court therefore erred in holding that the invention of the '405 patent lacks utility because it deceives the public through imitation in a manner that is designed to increase product sales.

*REVERSED and REMANDED.*