The CHIEF JUSTICE
 

 delivered the opinion of tJtie court.
 

 The question which- naturally presents itself for considera-,
 
 *505
 
 tion at the outset of this inquiry is, whether the new article of'manufacture, claimed as an invention1, yvas~ patentable as such. If not, there is an end of. the. case and we need not go further.
 

 A patent may be obtained for a new or useful art, .machine, manufacture, or composition of matter,, or any new and useful improvement thereof. In this case, as has been seen, Blair’s patent was for “ a new manufacture,” being a new and-useful rubber head for lead-pencils. It was not for the combination of the head with the pencil, but for a head to be attached to a pencil or something else of like character. It becomes necessary, therefore, to-examine the description which the patentee has given of his new article of manufacture, and determine what it is, and whether it was properly ■the subject of a patent.
 

 It is to be made of rubber or rubber and some other-material which will increase its erasive properties. This part of the invention alone could not have been' patented. Rubber had long been known, and so had rubber combined with other substances to increase its naturally erasive qualities.
 

 It'is to be of any convenient external form. It may have a flat-top surface, or its top m.ay be of a semicircular or conical shape, or any other that may be desirable. This would seem-to indicate clearly that the external form was not. a part of the invention. It was, however, urged upon the argument, that the invention did consist in the projecting surfaces extending out from the head, .and which appear, as is claimed, in the drawings attached to 1¡he specifications. It is true, that in two out of the three drawings projecting surfaces are indicated, but-such is not beyond question the case with the third. The shape there shown is conical, extending to a point, and evidently intended to represent the form mentioned as specially'adapted to the use of draughtsmen in erasing lines from their drawings. It was the end of such a pencil, not the sides, that was to furnish the particular advantage of form. But. although drawings do accompany the specification and are referred to, it is evident
 
 *506
 
 that this reference is for the purpose of illustration only, because the patentee is careful to say that “he does .not limit-his invention to the precise forms shown,-as it may have ■ such or any other convenient-'for the purpose; so- long as it is made so as to'encompass the pencil and'present an erasive surface upon the sides of the same.” Certainly words could hardjy have been chosen to Indicate more clearly that a patent was not asked for the external form, and it is very evident that the essential element of the invention as understood by the patentee was the facility provided for áttaehing the head to the pencil. The prominent-idea in the mind of the inventor clearly was the form of the attachment, not of the head. If additional proof of this is required, it- may be found in the further statement in the' specifications, which locates the head for use-at
 
 or near
 
 the end of the pencil, and so made as to surround the part on which if is to be placed and be held thereon by the inherent elasticity of the material of ' ■ which'it is to be composed. If intended for use at any other place than on the end of the pencil, the projections could .not be essential, as- any form that would surround the part would present the requisite erasive surface.'
 

 Again, the head is to have in it longitudinally, a socket to receive one end of a lead-pencil or-a tenon extending from it. This socket is to be cylindrical or of any other proper, shape.' Usually, the inventor says, he made it so as to ex-, tend -part way through' the head, but if desirable, it might be extended entirely through. It must be within one end, but any, particular location at the end is not made essential. This clearly is no more than providing that the piece of rubber to be used must have an opening leading from one end into or through it. This opening may be of any form and erf any extent longitudinally. The- form, therefore, of the inside cavity is no more the subject of the patent than-’ the external shape. Any piece of rubber with a hole in it is all that is required thus far to meet the calls of the specifications, and thus far there is. nothing new, therefore, in the invention. Both .the outside and inside may be made of any form which, will accommodate the parties desiring, the use.'
 

 
 *507
 
 But the cavity must be made smaller than the pencil and so constructed as to encompass its sides and be held thereon by the inherent elasticity of the rubber. This adds nothing to the patentable character of the invention. Everybody knew, when the patent was applied for,- that if a solid substance was inserted into a cavity in a piece of rubber smaller than itself, the rubber would cling to it. The small opening in the piece of rubber not limited in form or shape, was not patentable, neither was the elasticity of the rubber. What, therefore, is left for this patentee but the idea that if a pencil is inserted into a cavity in a piece of rubber smaller than itself the rubber will attach itself to the pencil, and whmi so attached become convenient for use as an eraser?
 

 An idea of itself is not patentable, but a new device by which it may be made practically useful is. The idea of this patentee was a good one, but his device to give it effect, though useful, was not new. Consequently he took nothing by his patent.
 

 The decree of the Circuit Court is
 

 Affirmed.'