DEY TIME-REGISTER CO. v. W. H. BUNDY RECORDING CO.

(Circuit Court, N. D. New York. March 12, 1909.)

No. 7,174.

1. PATENTS (§ 167*) — CONSTRUCTION — LIMITATION OF CLAIMS BY SPECIFICATIONS.

Claims of a patent are to be construed in the light of the specifications, and while, when plain and specific, they cannot be extended, they may be limited thereby, and a claim is not to be defeated because it is broad in its language, when it is limited by the specifications and is susceptible of limitation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

2. PATENTS (§ 136*)—CONSTRUCTION—MISTAKEN LIMITATION OF CLAIMS.

The remedy for a mistaken limitation in the claims of a patent is by a reissue and not by construction.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 198; Dec. Dig. § 136.*]

3. PATENTS (§ 328*)—INFRINGEMENT—TIME-RECORDERS—"REGULAR RECORDS" —"IRREGULAR RECORDS."

The Dey patent No. 786,011, claims 35, 54, 60–64, inclusive, for an improvement in workmen's time-recorders, which consists generically in adding to the prior clock-controlled time-recorder, having automatically actuated time-printing mechanism, automatic time-controlled "means adapted to print regular records in a certain color and irregular records in a certain other color";—regular records being those made when a workman enters or leaves at the regular time, and irregular records those made when he enters or leaves before or after the regular time—are limited to means by which the record itself, that is, the impression of the figures or letters which record the time, is printed in different colors, and are not infringed by a machine by which all records of time are printed in the same color, but which indicates an irregular record by an extra mark printed in a different color, especially in view of the limitations imposed on the patent by the prior art, which includes means for printing extra characters.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

4. PATENTS (§ 226*)—INFRINGEMENT—IDENTITY OF RESULT.

Patents cover the means employed to effect results, and to be an infringer one must not only reach the same result, but he must reach it by the same or substantially equivalent means.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 357; Dec. Dig. § 226.*]

In Equity.

Suit to restrain alleged infringement of certain claims of United States letters patent No. 786,011, dated March 28, 1905, for new and useful improvements in time-recorders, and which letters patent were issued to John Dey and Alexander Dey.

Kerr, Page, Cooper & Hayward, for complainant.
Parsons, Hall & Bodell, for defendant.

RAY, District Judge. The alleged invention disclosed and claimed in the patent in suit relates to time-recorders, and, says the patent:

"While as to some of its features the invention may be applied to various classes of printing or recording machines, the invention is more particularly

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

directed to certain improvements in time-recorders adapted for recording the times of entering or leaving a factory or other establishment of the individuals employed therein."

The patent further says:

"One of the objects of the invention is to provide means in a workman's time-recorder whereby records of different classes are made in marks of different colors or otherwise characteristic of the classes.

"Another object thereof is to provide means whereby the operations of the machine are placed beyond the control of the workman at all times."

The patent contains 66 claims, of which claims 35, 54, 60, 61, 62, 63, and 64 only are in issue here. The claims of the patent are preceded by the following statement:

"As many changes could be made in the above construction, and many apparently widely different embodiments of our invention could be made without departing from the scope thereof, we intend that all matter contained in the above description or shown in the accompanying drawings shall be interpreted as illustrative and not in a limiting sense. We desire it also to be understood that the language used in the following claims is intended to cover all of the generic and specific features of the invention herein described, and all statements of the scope of the invention which, as a matter of language, might be said to fall there-between."

The claims in issue read as follows:

"(35) A clock-controlled time-recorder having automatically-acting time-printing means adapted to print regular records in a certain color and irregular records in a certain other color. * * *

"(54) A clock-controlled time-recorder having automatically-actuated time-printing means adapted to print regular records with an impression of a certain color, and irregular records with an impression of a certain other color. * * *

"(60) A time-recorder including, in combination, time-controlled printing mechanism, means for taking impressions from said printing mechanism upon a record-surface, and means whereby the impressions made by said printing mechanism during different predetermined intervals are made in different colors.

"(61) A time-recorder including, in combination, time-controlled printing mechanism, means for taking impressions from said printing mechanism upon a record-surface, and automatic time-controlled means adapted to cause the impressions made by said printing mechanism during different predetermined intervals of time to appear in different colors.

"(62) In a time-recorder, in combination, time-controlled printing mechanism, means for taking impressions from said printing mechanism upon a record-surface, and automatic means whereby said impressions of different classes are made in colors distinctive of said classes.

"(63) In a time-recorder, in combination, time-controlled printing mechanism, means for taking impressions from said printing mechanism upon a record-surface, and automatic time-controlled means adapted to cause such impressions of different classes to appear in colors distinctive of said classes.

"(64) In a time-recorder, in combination, time-controlled printing mechanism, means for taking impressions from said printing mechanism upon a record-surface, and automatic means whereby irregular records formed by said impressions are made in a certain color and regular records in a certain other color."

The patent in suit does not purport to cover, show, or describe a time-recorder complete in all its details, but only so much thereof as will show and illustrate the parts mentioned in the 66 claims of the patent.

Claims 35 and 54 call for a clock-controlled time-recorder having automatically-acting time-printing means and automatically-actuated time-printing means respectively. Claim 35, in addition, says that such time-printing means must be "adapted to print regular records in a certain color, and irregular records in a certain other color." Claim 54, in addition to calling for a time-printing means, states that same must be adapted to print regular records with an impression of a certain color, and irregular records with an impression of a certain other color. It seems to me clear that if regular records are printed in a certain color, as, for instance, blue, and irregular records are printed in a certain other color, as, for instance, red, the regular records are printed with an impression of the color blue, and irregular records are printed with an impression of the color red, which is another color. The difference between automatically-acting time-printing means and automatically-actuated time-printing means has not been explained to the court, and it is not sufficiently acute to distinguish any substantial difference between claim 35 and claim 54. Regular records are those made by the workman when he enters and records his time of entry at the regular hour for commencing work, or when he departs and records his time of leaving at the regular hour of departure. Irregular records are those made by the workman when he enters late and records his time of arrival, or when he departs out of the regular time for departure, and records his time of leaving. The workman records in figures or characters the hour and minute of his arrival or the hour and minute of his departure. Whether the printing devices are such as will make figures or such as will indicate the hour and minute by other characters is immaterial; to be a record within the meaning of these claims the marks made on the card must indicate the hour and minute of arrival or departure, as the case may be.

It would not satisfy claims 35 and 54 to provide an automatically-actuated or acting printing mechanism or device or means which, without recording the time, hour, and minute of arrival or departure, would simply, by some mark, indicate that the workman had entered late or departed early; that is, out of the regular time. But may not the claims be satisfied by and do they not include, broadly construed, such printing means which record the time of arrival or departure, as the case may be, regular or irregular, all in one color, and also indicate by an impression of some added character, made in some other color, the fact that such record of such irregular time is a record of irregular time?

The word "adapted," as used in these claims, evidently refers to the fact that prior clock-controlled time-recorders having automatically-acting time-printing means are not calculated to or so constructed as to print the time or impress the characters indicating the time, when recording irregular time, on the card or paper in a color different from the imprint or impression thereon recording the regular time. It was the purpose to add to the old clock-controlled time-recorder having automatically-actuated time-printing means such means, acting in conjunction therewith, as would print irregular time in a different color from the regular time, or to so modify and change the print-

ing means and mechanism that this could be done by one and the same machine. In other words, the said printing means are, by changes or additions, or both, "adapted" to print "records" of the different classes, "regular time" or "irregular time," in different or distinctive colors; that is, in such colors as will distinguish the one class of recorded time from the other class of recorded time. The verb "adapt" means:

"To make suitable; make to correspond; fit or suit; proportion. (2) To fit by alteration; modify or remodel for a different purpose, * * * (3) To make by altering or fitting something else; produce by change of form or character."

"Adapted" means "fit or suitable." Century Dictionary. The claim may include an entirely new time-recorder, but the claims imply such changes in the old form of construction that the time-printing means are so constructed as to print the records in the manner indicated.

Each workman has a card upon which he prints all his time, regular or irregular. Should we provide by law that all records of warranty deeds shall be made, or written, or printed, in a certain color, and all quitclaim deeds in some other, or "a certain other color," would the law be satisfied or complied with by writing or printing the records of both in the same colored ink and then adding at the head of each record of each deed some plain and distinctive mark or sign in a distinctive and different colored ink indicating and showing that the one was the record of a warranty deed and the other a record of a quitclaim deed? Clearly not. The "records" are evidently the figures, or signs, or symbols, or characters showing the time of entry and departure. Marks indicating that a workman arrived late and departed early, only, are not records of his time within the meaning of these claims or specifications.

What is intended is emphasized by the specifications, not only by the language already quoted, "whereby records of different classes are made in marks of different colors or otherwise characteristic of the classes," but by the following contained therein, viz.:

"More specifically, other objects of the invention are to provide a mechanism whereby a relative motion is provided between the surface on which the records are made and the means which produce the impressions in different colors; to provide means whereby this relative motion is automatically controlled by a clock mechanism; to provide a mechanism whereby a relative motion is produced by the manual recording operations performed on the machine, said mechanism being rendered operative by a clock-controlled mechanism; to provide a mechanism whereby the relative movement between the record-surface and the means for making impressions in different colors is rendered operative or controlled with the time-printing mechanism; to provide a locking mechanism whereby the relative motion between the record-surface and the means for making impressions in different colors is placed beyond the control of the individuals whose times are recorded upon the machine; to provide a locking mechanism whereby the relation between the record-surface and the means for making impressions in different colors thereon is substantially unaffected by vibration or jarring, and to provide means for indicating visually the condition of the mechanism. * * *

"In order to render clearer the general nature of our invention, it may here be noted that in the use of apparatus of the nature of time-recorders the impressions made upon the recording-surface may in general be divided into two classes, namely, those made within the proper hours and those made without such hours, the latter denoting the early leaving or tardy arrival of a workman. Although an examination of the figures would show in which class

each record was made, nevertheless it would be of value if means could be provided whereby these entries could be more readily distinguished. In order to attain this and other desirable results, it is proposed to so arrange the mechanism as to stamp the impressions of the two classes above indicated in distinctive colors. In accordance with one feature of the invention, a time-controlled printing mechanism is combined with means for making impressions therefrom upon a record-surface, and means whereby the impressions made during different intervals of time are made with different inks. For example, if a time-recorder should be so set as to give an impression in red if made before 12 or after 1, and in green between the hours of 12 and 1, assuming that the lunch hour extends over that period of time, an impression upon the time-record of an employé would indicate at a glance that he had left work before the time set, or was tardy upon his return, without the necessity of ex-amining the figures. In accordance with this illustrative embodiment, it is proposed to accomplish this desirable result by means of a lateral shifting of the ribbon relative to a type-bearing member, so as to bring different por-tions thereof or separate ribbons of varying colors into operative position. It will readily be seen that if a practical and efficient mechanism of the above type were provided, the same might be so arranged as to print any overtime work done by the laborer in a color which is distinctive with relation to the record of that done within the regular working hours. The advantage of this feature, whereby the fact that a workman is entitled to extra pay is shown at a glance without the necessity for examining the figures upon the card, will be readily appreciated.

"The means whereby the impressions made upon the record-surface during different intervals of time are printed in different inks may be greatly varied in construction. In accordance with one feature of the invention, this mech-anism is so constructed that a relative motion is produced between the record-receiving surface and the means whereby the impressions are made in differ-ent inks. In accordance with the embodiment of the invention herein shown, the means whereby the impressions are made in different inks are shifted with relation to the record-surface, the shifting operations being effected at predetermined intervals under control of the clock mechanism whereby the time-printing wheels are controlled. In accordance with this embodiment of the invention also, a single time-printing mechanism is employed, and the means for making impressions therefrom in different colors comprises devices for supplying inks of different colors, the ink-applying devices being shifted with relation to both the time-printing mechanism and the record-surface. In accordance with one feature of the invention, the means for supplying inks of different colors consists of a ribbon mechanism, and in the particular em-bodiment of the invention illustrated the ribbon mechanism comprises a single ink ribbon having different side-by-side longitudinal portions thereof supplied with inks of different colors, and the ribbon-carrying mechanism is so mounted that it may be shifted laterally with relation to both the printing-wheels and the record-surface. In accordance with one feature of the invention also, the means whereby a relative movement is effected between the record-surface and the means for making impressions in different colors is controlled or rendered operative by the clock mechanism; but the actual shifting movement is pro-duced automatically when the machine is actuated in the ordinary way to per-form the recording operations. In accordance with one feature of the inven-tion also, means are provided whereby the shifting mechanism is under posi-tive control at all times and is locked to prevent movement either by design of the workman or by accidental or incidental vibration or jarring at any other time than that for which the machine is set. * * *

"The operation of the above-described embodiment of our invention is as follows: Assuming the parts to be in normal condition, with the red ribbon opposite the printing-wheel, 1, as shown in Fig. 3 of the drawings, and with a notch, 55, upon the disk, 47, in such position as to be nearly opposite the wiper-arm, 48, a slight further movement of the clockwork will permit the latter part to fall into the notch, 55, this falling being accomplished by virtue of the weight of the parts connected with arm, 54, or by a suitable spring, if desired. The several parts are so adjusted that this movement takes place at the time at which it is desired to change the color of the impressions made

by the instrument. For example, if the lunch hour is from 12 to 1, and it is thus desired that an impression made before 12 shall be in red ink, whereas after 12 is in green ink, this movement will take place not later than and substantially at 12 o'clock. * * * This movement will cause the shifting of the ribbon and of the mechanism upon which it is mounted by means of the sliding of the ribbon-bar and the sleeves affixed thereto upon the spindles within the same. In this manner the green ribbon is brought opposite the printing-wheel, and the impression made by the movement of the hand-lever causing this shifting will be in green, thus indicating that the same is made after 12, and that the time of leaving of the workman was satisfactory. With the parts in this condition any desired number of impressions may be made without changing the color thereof or affecting the ribbon-shifting mechanism. * * * This movement causes the movement of swinging lever, 35, to a position in which the point of wedge-shaped member, 40, is slightly inside the edge of knife-edge, 41, and accordingly any impression made after this movement will result in the reshifting of the ribbon so as to bring the red color into operative position by an operation which is the reverse of that above described. Any impression made after this point will accordingly be made in red ink, the same indicating that the machine has been used after the hour set for the return of the workman, or, in other words, that the user thereof was tardy. * * *

"For example, if a workman arrives at 1 minute after 1, assuming the lunch hour, as hereinbefore indicated, the mechanism is in condition to print in red, thus showing the tardy arrival of the workman. If a backward movement of the wheel were unrestricted, however, it might be possible to so swing or jar the instrument as to cause the minute wheel to print the hour of 1 o'clock, which would appear to indicate the fact that the workman arrived on time, although the impression would nevertheless be made in red. Such a contradictory state of affairs is prevented by the ratchet-teeth, 80, which, coacting with the pins, 78 and 79, prevent a rearward movement of the minute wheel after the same has arrived in a position to set the ribbon-shifting mechanism in operative condition. * * *

"Thus the ribbon may be caused to shift at a reasonable time before the morning work hour and again at that time, so as to print the records of the arriving workmen in green color. Throughout the morning work hours—as, for example, from 7 to 12—the mechanism will be in such condition as to print in red the time when used, and the ribbon may be reshifted at the hour of 12, so as to again print in green for the outgoing workmen. * * * It will also be seen that the mechanism may be constructed so as to cause a change in color of the impression made exactly at the desired minute or fraction of a minute without the necessity for any fine adjustment of the parts."

The words "whereby records are made" are significant, and imply the actual making of a record; that is, the recording of the time. However, such records are made "in marks of different colors" or marks "otherwise characteristic of the classes" of records, meaning by classes "regular" and "irregular" records of time. Can we read the words of the specifications, "whereby records of different classes are made in marks of different colors or otherwise characteristic of the classes," to mean that the records are or may be made in different colors or in any other manner which will characterize the different classes of records; that is, distinguish the one class from the other class, irrespective of the color of the record itself? Must the record itself—that is, the signs or figures constituting the record of the time, the marks constituting the record—be such that they, of themselves, will show by distinctive form, shape, or color the class to which the record belongs, or is it sufficient that all the records are printed in the same colored ink, that all of the marks are of the same color, and that the one class is distinguished from another class by some separate

character or symbol printed in company with the record of a particular entry showing that such entry is irregular? The records are made "in marks" or by the use of marks, but these marks of one class of records are "of different colors" from the colors of the other class, or, if not of different colors, then the marks constituting the records must be "otherwise characteristic of the classes"; that is, the "marks" constituting the records of the one class must be different from the "marks" constituting the record of the other class.

Claims in a patent may be explained by a reference to the specifications, and the specifications as well as the prior art may limit the broad language of a claim, but the specifications cannot be used to broaden a plain and specific claim. We are not to defeat a claim because it is broad in its expressions or language, when the specifications limit it and it is susceptible of limitation. The claims are to be construed in the light of the specifications, but they cannot be extended thereby. Patents are to be liberally construed so as to secure to the inventor the real invention he intends to secure, and technical defects and inaccuracies will not defeat this result. "As set forth" or "substantially as described" are words always read with the claims as if contained therein, but, if one thing is claimed and another thing is described in the specifications, or if the claim in its language is narrow and limited, in material matters or matters not merely descriptive, it cannot be broadened by the specifications. A patentee may describe a broad and generic invention, as of a machine; but if he does not claim it, but claims some lesser or different thing, he must be deemed to have surrendered to the public that which he has not claimed. So the words of claims are to be given a reasonable and not a technical or exact meaning which would defeat the intent. But the plain and clear meaning of the terms employed cannot be varied by construction, which must be in conformity to the self-imposed limitations contained in the claims, if any. The remedy for mistaken limitations in the claims of a patent are by reissue and not by construction. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 278, 24 L. Ed. 344; McClain v. Ortmayer, 141 U. S. 419, 425, 12 Sup. Ct. 76, 35 L. Ed. 800; Coupe v. Royer, 155 U. S. 565, 576, 577, 15 Sup. Ct. 199, 39 L. Ed. 263; White v. Dunbar, 119 U. S. 47, 7 Sup. Ct. 72, 30 L. Ed. 303; Burns v. Meyer, 100 U. S. 671, 672, 25 L. Ed. 738; Universal Brush Co. v. Sonn, 154 Fed. 665, 83 C. C. A. 422; Roemer v. Peddie, 132 U. S. 313, 317, 10 Sup. Ct. 98, 33 L. Ed. 382; Phœnix Caster Co. v. Spiegel, 133 U. S. 360, 369, 10 Sup. Ct. 409, 33 L. Ed. 663; Wagner T. Co. v. Wyckoff, 151 Fed. 585, 591, 81 C. C. A. 129; Wollensak v. Sargent, 151 U. S. 221, 14 Sup. Ct. 291, 38 L. Ed. 137; McCarty v. Lehigh V. R. Co., 160 U. S. 110, 16 Sup. Ct. 240, 40 L. Ed. 358; Lehigh V. R. Co. v. Mellon, 104 U. S. 112, 26 L. Ed. 639; Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Western E. Mfg. Co. v. Ansonia Brass & C. Co., 114 U. S. 447, 5 Sup. Ct. 941, 29 L. Ed. 210; Howe Mach. Co. v. National N. Co., 134 U. S. 388, 10 Sup. Ct. 570, 33 L. Ed. 963.

Turning from the specifications to claims 35 and 54, which are for the time-recorder as a whole, they call explicitly for means "adapted

to print regular records in a certain color and irregular records in a certain other color." The records themselves are to be printed in colors, and the irregular records, if any there be upon the card or slip, are to be printed in a color different from that of the regular records. It seems to me that the language or terms used in these claims is plain and specific and not open to construction, except so far as necessary to ascertain what "regular records" and "irregular records" are. The specifications tell us that, as will be seen from the following:

"The invention relates to time-recorders," and "is more particularly directed to certain improvements in time-recorders adapted for recording the times of entering or leaving a factory, or other establishment, of the individuals employed therein."

Also:

"Records of different classes are made in marks of different colors," etc.

And:

"In order to render clearer the general nature of our invention, * * * the impressions made upon the recording-surface may in general be divided into two classes, namely, those made within the proper hours and those made without such hours, the latter denoting the early leaving or tardy arrival of a workman. Although an examination of the figures would show in which class each record was made, nevertheless it would be of value if means could be provided whereby these entries could be more readily distinguished. In order to attain this and other desirable results, it is proposed to so arrange the mechanism as to stamp the impressions of the two classes above indicated in distinctive colors. * * * For example, if a time-recorder should be so set as to give an impression in red if made before 12 or after 1, and is green between the hours of 12 and 1, assuming that the lunch hour extends over that period of time, an impression upon the time-recorder of an employé would indicate at a glance that he had left work before the time set, or was tardy upon his return, without the necessity of examining the figures. * * * For example, if the lunch hour is from 12 to 1, and it is thus desired that an impression made before 12 shall be in red ink, whereas after 12 it is in green ink, this movement will take place not later than and substantially at 12 o'clock. * * * In this manner the green ribbon is brought opposite the printing wheel, and the impression made by the movement of the hand lever causing this shifting will be in green, thus indicating that the same is made after 12, and that the time of leaving of the workman was satisfactory. * * * Any impression made after this point will accordingly be made in red ink, the same indicating that the machine has been used after the hour set for the return of the workman, or, in other words, that the user thereof was tardy. * * * Thus the ribbon may be caused to shift at a reasonable time before the morning work hour and again at that time, so as to print the records of the arriving workmen in green color. Throughout the morning work hours, as, for example, from 7 to 12, the mechanism will be in such condition as to print in red the time when used, and the ribbon may be reshifted at the hour of 12, so as to again print in green for the outgoing workmen. In this manner the mechanism may be formed so as to act in accordance with any desired hours of work and any number of notches, as, for example, an extra notch for evening work may be formed upon the disk."

It is evident that the time of entry and departure of each workman is to be recorded, and that this time so recorded is the record; that when two or more have so entered or departed we have "records"; that, assuming the work hours of the forenoon are from 7 to 12 o'clock, the workman who enters and records his time after 7 has made an "irregular record," as has the one who leaves and records his time be-

fore 12, while those who enter within the "reasonable time" fixed for entering before 7, and record their time, have made "regular records," as have those who leave after 12 and before 1 and record their time of leaving.

It is, of course, true that a workman may record the fact that he was too late, irregular, in entering, or too early, irregular, in leaving, by a mark on the record sheet intended to so indicate, but this would not be a time-record or record of time within the intent and meaning of these claims and specifications. This alone, if unaccompanied by a registry of the hour and minute of entry or departure, would be of no particular consequence—give no aid in fixing or determining the actual time the employé had worked.

It has been noted that "records of different classes are made in marks of different colors or otherwise characteristic of the classes." The specifications also say:

"It may be noted that the term 'mark' is used throughout this specification and in the following claims in a broad sense as denoting any perforation, impression, distortion, or discoloration of a receiving-surface whereby a record is made. It may also be noted that by 'printing mechanism' is meant any means for forming a mark as above defined, and 'impression' means the mark made as distinguished from the surface upon which it is made."

Neither the word "mark" nor "marks" appears in either of the claims in issue here. However, records are made "in marks of different colors," or records are made "in marks"; otherwise, if so made as to be characteristic of the classes, that is; I take it, so as to plainly distinguish the one class of records from the other. In either case there must be a record of the time "in marks," which marks recording the time are "characteristic" of the classes of time, regular and irregular, and this imposes the necessity of having the "marks" used to record the regular time, and which indicate the time, different in color, size, or shape from those marks used to record irregular time. In short, it is not necessary under all the claims of this patent to print the time in figures. The time may be printed or recorded by perforations in the card or slip, or by pictures, or by printing regular time in small figures and irregular time in large figures. But the marks must indicate and show the time, not merely the fact that a workman was late in entering or early in leaving. However, the claims in issue here do not relate to or include such modes of printing or recording the time. Each and every one of the claims in issue demands and is limited to means adapted to print regular records in one color and irregular records in some other color, as (claim 60), "means for taking impressions from said printing mechanism upon a record-surface, and means whereby the impressions made by said printing mechanism during different predetermined intervals are made in different colors"; or (claim 61) "means adapted to cause the impressions made by said printing mechanism during different predetermined intervals of time to appear in different colors"; or (claim 62) "means for taking impressions from said printing mechanism upon a record-surface, and automatic means whereby said impressions of different classes are made in colors distinctive of said classes"; or (claim 63) "means for taking impressions from said printing mechanism upon

a record-surface, and automatic time-controlled means adapted to cause such impressions of different classes to appear in colors distinctive of said classes"; or (claim 64) "means for taking impressions from said printing mechanism upon a record-surface, and automatic means whereby irregular records formed by said impressions are made in a certain color and regular records in a certain other color." These "means" are all "in a time-recorder," and combined with "printing mechanism" and the "impressions" or "records," as the case may be, as to these claims, are made by the printing mechanism in two classes, regular and irregular records, as we have seen, each class in a different color. Printing mechanism is means for forming a "mark," and "impression" means the mark made, while mark includes "perforation, impression, distortion, or discoloration of a receiving surface" whereby a record may be made.

There is no doubt in my mind that each of the claims in issue here calls for means that will make a record of the workman's regular time in one color, as green, and a record of his irregular time in another color, as red, in marks, figures, or characters showing the time of entry and departure, and that a separate and distinct mark, not indicating either the hour or the minute or both, but simply the fact that the figures or marks which accompany it is a record of irregular time, which accompanies a record of the workman's time made all in one color, does not answer to either claim in issue, and that a time-recorder adapted to make such a record only does not infringe either claim in issue, even when such distinct and separate mark accompanying the time record itself is of a different and distinct color. Machines of that class are covered, if at all, by other claims of the patent in suit. This is made definite and certain by other claims, as claim 33, which reads:

"A clock-controlled time-recorder comprising time-printing mechanism adapted to print records of different classes in distinctive impressions."

Claims 65 and 66 read:

"(65) A time-recorder, including, in combination, time-controlled marking devices, means for producing records therefrom, and means whereby records of different classes are made by marks having distinguishing characteristics.

"(66) A time-recorder, including, in combination, time-controlled marking devices, means for producing records therefrom, and means whereby records of regular and of irregular character are made by marks having distinguishing characteristics."

In all these claims different colors for different classes of records are not demanded or suggested. In claims 65 and 66 we find the words "marks" and "marking," and when we turn back to the specifications we find that these claims are for devices which make marks by perforations, distortions, etc., and that these claims are also for those devices where the records are made, not "in marks of different colors," but in marks or impressions "otherwise characteristic of the classes." These claims not only omit all reference to color and differences of color in the record, but specify that the different classes of records are made by marks having "distinguishing characteristics"; that is, any sort of marks recording time where the marks recording

regular time differ substantially and plainly from those recording irregular time.

## Defendant's Time-Recorder.

The defendant's time-recorder does not have the mechanism of the patent in suit claimed thereby. There is no pretense that it does. But it does have a two-colored ribbon. This is not shifted laterally or for the purpose of making an irregular record in a color different from that of a regular record. Defendant's time-recorder does not print or impress on the card or slip or other recording-surface the regular time of the workman in one color and his irregular time in another color. It is not adapted to do that, and is not capable of doing it. It was not designed for such work. The time, regular or irregular, is and must be all printed in one and the same color. The record of the workman's time is all in the same color. In the record itself there is nothing to indicate that an entry of time is regular or irregular, except as we inspect the figures made we find that they of themselves show that the workman was either late in entering or early in leaving, as 7:30 would indicate 30 minutes late in arriving, and 11:20 would indicate 40 minutes early in leaving. These would be irregular records. All time-recorders do this where figures are used. To catch the eye and indicate at a glance that the record on the card contains irregular records, or records of irregular time, the defendant's device has an added independent character actuated only when the workman records out of regular time, as a dash or a star, which strikes the red part of the ribbon at the same time the type which prints or impresses the time strikes the other part of the ribbon, and thus both make marks side by side on the recording surface, and this extra or added mark indicates at a glance that that particular entry of time which it accompanies is irregular.

The purpose of both the complainant's device and defendant's device is to indicate to the employer and employé, without reading the particular entry of irregular time, that it is such an entry. It is useful to the employer in his bookkeeping, or in figuring up at the end of the week or day the amount of wages due each workman, or the actual number of hours the employé has worked  To illustrate: The working hours are from 7 a. m. to 12 m. and from 1 p. m. to 6 p. m., 10 hours in all, and the employer is paying $3 per day, or 30 cents per hour. When the card or slip of the workman is turned in at the end of the week and his actual time is to be figured and the amount earned ascertained, it is necessary, if irregular time is indicated on the record only by the figures or characters made in the usual course, all of one size, form, or color, to look at each entry, which takes time and patience. The reader of the card might fail to note entries of irregular time. But with all irregular entries made in a different colored ink from the regular entries, the reader of the card sees at a glance whether or not the workman is entitled to full time and full pay for the work. If there are no records on the card in red, the color used to designate irregular time, the bookkeeper enters $18 on a mere glance at the card. If there be records on that card in red, then the bookkeeper inspects those only, and makes the proper deduction from the

total for the week, or $18. It is self-evident that a red star or red bar by the side of an irregular entry or record, and in the same space or square with it, will indicate the same facts and give the bookkeeper substantially the same aid. Such a mark calls attention to each irregular entry. The one mode of indicating "irregular records" on the face of the recording sheet is the substantial equivalent of the other mode, inasmuch as both indicate that the particular record entry is irregular time. But the means for making the records indicating such irregular time are different, and the manner in which such records are pointed out on the record surface is different in the two timerecorders. The work actually done by the two machines is different, and the respective operations of the two in doing the work differ substantially and materially. Complainant's machine actually prints or records the time of each workman in different colors if he has made time of the two classes, regular and irregular. It prints or records his regular time in one color, and his irregular time in another and a distinctive color. The complainant's machine was intended and designed to do that very thing, and was therefore "adapted" to accomplish that particular result. The Dey patent in issue here so explicitly declares. Mechanical devices were added and changes made so as to do that particular thing. These added mechanical devices, described in the patent at great length and with great particularity, and made the subject of a great number of claims, the defendant does not have or use, as he does not do that work or accomplish that result or intend so to do. The ultimate object or purpose of doing that particular thing is readily understood, but the ultimate purpose is not what the machine accomplishes. Says the specification:

"The invention is more particularly directed to certain improvements in time-recorders adapted for recording the times of entering or leaving a factory or other establishment of the individuals employed therein. * * * One of the objects of the invention is to provide means in a workman's time-recorder whereby records of different classes are made in marks of different colors," etc.

The claims in issue deal with means for making "records of different classes in marks of different colors" only, as we have seen. The way to do this particular thing is pointed out, and new and improved mechanical means for doing it are provided, added to a time-recorder, and specifically claimed. These defendant does not have, or use, or require. The defendant has not "adapted" its machine to do such work or to accomplish such result.

The very function of complainant's time-recorder is to print or record the regular time in marks of one color and the irregular time in marks of another color and a distinctive color, or to record the regular time, irrespective of color, in marks or characters distinctive of that class of records, and irregular time in characters distinctive of that class of records, and separate and distinct claims have been framed and inserted in the patent in suit to recover both species of marks. The one set of claims relates to the color of the impressions recording the time, the other to the form of the impressions recording the time. If defendant, in recording time, uses marks characteristic of the classes, viz., figures of one color to record regular time, and figures

of the same color with a red dash or dot by their side to record irregular time, the red dash or dot being used and added as a mark to make those figures characteristic of the class to which they belong, and thereby infringes claims 65 and 66, clearly he does not infringe the claims in issue, each and every one of which calls for records of time made in different colors to designate the class to which each belongs, and demands that the figures or characters recording the time be in colors distinctive of the classes; that is, that those showing regular time be made in one color and that those showing irregular time, if any, be made in another and a distinctive color. The claims in issue contain this self-imposed limitation, and the claims cannot be extended by construction. See cases before cited.

The following elements of claims 60 to 64, inclusive, are not found in defendant's time-recorder: Claim 60, "means whereby the impressions made by said printing mechanism during different predetermined intervals are made in different colors"; claim 61, "means adapted to cause the impressions made by said printing mechanism during different predetermined intervals of time to appear in different colors"; claim 62, "means whereby said impressions of different classes are made in colors distinctive of said classes"; claim 63, "means adapted to cause such impressions of different classes to appear in colors distinctive of said classes"; and claim 64, "means whereby irregular records formed by said impressions are made in a certain color, and regular records in a certain other color."

The following elements of claims 54 and 35 are not found in defendant's machine, viz., "automatically-actuated time-printing means adapted to print regular records with an impression of a certain color, and irregular records with an impression of a certain other color" (claim 54), and "automatically-acting time-printing means adapted to print regular records in a certain color and irregular records in a certain other color" (claim 35). There is no equivalent, as defendant's time-recorder is not adapted to do the work required and cannot do it. The function of complainant's means, referred to, is to print the two classes of records of time in marks or figures of some kind, the one class in one color and the other class in another or different color. The function is not to point out or indicate to the employer, or to his bookkeeper, or to the employé, the fact that the record made in the one color is of one class and the record made in the other color is of the other class. Such is the ultimate purpose or object of having the means referred to perform the function pointed out, but such purpose in having the means perform its work is not the function of the means employed.

But even did the time-recorder of the defendant accomplish or produce the same precise result as complainant's recorder, infringement would not be made out. To be an infringer, one must do more than reach the same result. Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 569, 18 Sup. Ct. 707, 42 L. Ed. 1136; Burr v. Duryee, 1 Wall. 531, 572, 17 L. Ed. 650; Miller v. Eagle Manufacturing Co., 151 U. S. 186, 201, 14 Sup. Ct. 310, 38 L. Ed. 121.

In Westinghouse v. Boyden Power Brake Co., 170 U. S. 569, 18 Sup. Ct. 723 (42 L. Ed. 1136), the court, speaking by Mr. Justice

Brown, who always speaks with accuracy and clearness and precision in patent cases, says:

"But after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which more than reach the same result is to hold, in other language, that he is entitled to patent his function. * * * That two machines produce the same effect will not justify the assertion that they are substantially the same, or that the devices used are therefore mere equivalents for those of another."

In Burr v. Duryee, 1 Wall. 531, 572, 17 L. Ed. 650, the court said:

"The argument used to show infringement assumes that every combination of devices in a machine which is used to produce the same effect is necessarily an equivalent for any other combination used for the same purpose. This is a flagrant abuse of the term 'equivalent.'"

In Miller v. Eagle Manufacturing Co., the court, at page 201 of 151 U. S., page 316 of 14 Sup. Ct. (38 L. Ed. 121), said:

"It is not the result, effect, or purpose to be accomplished which constitute invention, or entitles a party to a patent, but the mechanical means or instrumentalities by which the object sought is to be attained; but a patentee cannot so split up his invention for the purpose of securing additional results, or of extending, or of prolonging the life of any or all of its elemental parts. Patents cover the means employed to effect results. Rubber Tip Pencil Co. v. Howard, 20 Wall. 498, 507, 22 L. Ed. 410; Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 103."

To infringe even a pioneer or primary patent, the defendant must accomplish substantially the same result by substantially the same means, operating in substantially the same way, and equivalent means, known to be such at the date of the patent, are the same as the means specifically described.

The patentees, Dey & Dey, may have been the first to conceive the idea of applying the old idea of printing words or figures representing one thought in characters larger than those used to print words or figures representing another thought, so that at a glance they would be distinguished the one from the other, to a time-recorder in recording different classes of time. They may have been the first to produce means for doing this precise thing in a time-recorder. They may have been the first to conceive the idea of so printing or recording time in a time-recorder by printing regular time in blue, or green, or black, and irregular time in red or purple, but they could not patent or monopolize these ideas. They could patent means for making their conception of practical value and application. See cases cited. "Patents cover the means employed to effect results." Rubber Tip Pencil Co. v. Howard, 20 Wall. 498, 507, 22 L. Ed. 410; Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 103, cited and approved in Miller v. Eagle Pencil Mfg. Co., 151 U. S. 201, 14 Sup. Ct. 310, 38 L. Ed. 121. It follows that the defendant cannot be held to be an infringer in making, using, and selling a recorder which gives to the user thereof the same information by means of a sign or symbol as does complainant's by actually printing the record in red or some other distinguishing color,

it appearing that defendant's recorder has other means for producing and printing or impressing the sign on the record, sheet, or card, which operate in a different way and produce a different record or result, even if that result serves the same ultimate purpose as does complainant's device or machine. In complainant's recorder the clock brings certain mechanism into position, so that at regular hours for recording when the workman presses the handle or lever whereby he records his time the red ribbon or red part of the ribbon is brought in front of the type wheel, and, as the hammer strikes. the type makes a record in red on the record sheet or card. The clock itself so moves the mechanism that at regular hours for recording time the red ribbon is not brought before the type wheel when the workman records his time. The same type wheel and type make the regular record that make the irregular record. In defendant's time-recorder there is no mechanism for moving the ribbon for the purpose of indicating irregular time, and the type wheel and type thereon always strike the ribbon used for recording regular time. In this recorder there is a distinct mechanism operated by the clock connected with an arm carrying an independent character, which is actuated at irregular hours for recording time, only, by the hand of the operator as he presses the handle or lever for recording his time. This character strikes the red line of the ribbon only.

## Prior Art.

But the prior art weighs heavily against the complainant's contention that the defendant infringes the claims in issue. Two colored ribbons were no novelty. In analogous arts it was not novel or new to print one part of a record in one color, one word or more, and the other parts in another color, or to so print or impress words or figures on a recording surface. There are many books printed in that way more than a hundred years old. Extra characters printed by the side of words to call attention thereto, or under same to emphasize it, were common. In time-recorders the regular time was printed by hour and minute printing wheels, and the mechanism was also provided with shiftable printing type for printing a. m. and p. m. in connection with the figures, so as to indicate forenoon and afternoon records, both made in precisely the same numerals. See patent to Larrabee, No. 726,546, dated April 28, 1903, for "workman's time-recorder." The defendant has improved this mechanism, as he had the right to do, and has substituted a two-colored ribbon, as he had the right to do, and added a character or substituted a character to indicate irregular time in place of a. m. and p. m., as he had the right to do. Substantially the same thing is shown in patent to J. C. Wilson, No. 543,416, dated July 23, 1895, for "time-recording apparatus." Of course, advance has been made in this particular branch of the art, but I can see no difference in principle between impressing a. m. or p. m. on the record sheet by the side of the time record by means of an independent type to designate or distinguish morning records from afternoon records, and impressing a bar or other character in the same place by means of an independent arm or printing wheel, or whatever is used to carry it, to designate or distinguish late or irregular time from regular time.

The mechanic skilled in the art would make modifications in the mechanism, of course, but he would be fully competent for the undertaking. As early as 1895, in a patent to W. L. Bundy, No. 552,232, for "workman's time-recorder," dated December 31, 1895, in addition to the numerals, it was desired to have the record show whether the figures were made as the workman came in or went out. We find in that patent the following, which speaks for itself:

"Upon the plate, 28, an 'In' and 'Out' scale is mounted and 86 is a pointer secured to a lifting-bar, 87, journaled in said plate and of angular outline, so that, when rotated, its inner end will actuate the arm, 88, pivoted upon the shaft, 6, and swing the extension, 89, so that the sign, symbol, or other character thereon will be upon the printing line, and in line with the characters upon the time and number wheels, so that the platen will then print an additional sign or character upon the paper tape, which, for instance, will indicate that the record made was that of the exit of the workman, in which case the pointer will stand at 'Out.' When it stands at 'In' no record of this sign or symbol will be printed.

"In Fig. 25 a part of a strip of paper, 40, is shown, and the record thereon indicates that workman No. 48 came in at 6 o'clock and 55 minutes, went out at 11 o'clock and 59 minutes, and returned in again at 12 o'clock and 58 minutes, the star, m, or other sign, symbol, or other character used indicating, by the fact of its impression appearing upon the paper, that each and every record in which it appears is the record of that workman going out or leaving the shop or factory."

In patent to Bundy, No. 453,230, of June 2, 1891, for "workman's time-recorder," we have a device of the same kind fully shown and described.

Whether defendant would use a two-colored ribbon or a one-colored ribbon was a mere matter of selection or choice. If he makes his extra mark by the side of a single entry to indicate it is irregular, as, for instance, 7:15, or 15 minutes late, and makes the impression of such character in the same color as the time impressions, which would be the prior art and nothing more in everything except the mere purpose of using the added character, he will have done everything necessary to indicate or point out the fact that such entry is of irregular time. If he makes such impression of the extra mark in red, it will the more readily catch the eye. The red will emphasize the characterization. This is the only object or purpose defendant can have in making this impression in red. The character that tells the story is there, whether it be in the one color or the other, and it obviates the necessity of reading any record except those having this distinguishing mark. Not so with complainant in printing the record of irregular time in red. It must print the irregular time in red, or some color other than that used for regular time records, or it has nothing whatever to distinguish the one class of records from the other.

The Dey patent did not monopolize in the time-recorder art the idea of printing or impressing letters or characters in a certain specific color so as to readily distinguish the record made from others printed in another color. If the Deys provided new and novel means for doing this thing and those means are covered by the claims in issue, and the defendant has adopted those means or their substantial equivalent, it infringes, otherwise not. It is not contended that the means employed are, as a whole, the same or substantial equivalents, unless

it be in the elements of a cam and a two-colored ribbon. These are two of the elements of complainant's means only. The invention of the patent in suit does not reside in either of these elements. The cam was old, and the two-colored ribbon was old. A slight change in the cam of the Larrabee patent was all that was necessary to adapt it to shift the ancillary character so as to differentiate regular from irregular time records. There may be invention in transferring a well-known thing from one structure to another to meet a new and novel exigency and adapting it to its new use in such situation.

In Rinsche patent of July 24, 1900, No. 654,181, for a "calculating machine" which, amongst other things, records figures and the totals thereof, we have the two-colored ribbons whereby we may record the figures in one color and the totals in another, as red, a distinctive and distinguishing color, for the purpose of distinguishing the one from the other at a mere glance. Says the patent:

"Printing the total in a distinguishing color. In Figs. 36, 37, and 38 I have shown means whereby, whenever a total is taken in the machine, the impression on the strip or sheet of paper will be in a different color or have some distinguishing characteristic to identify it as a total or the sum of the numbers in the machine, and the mechanism for accomplishing this consists, briefly stated, in arranging an inking ribbon of different color in juxtaposition to the ribbon ordinarily employed for regular operations of the machine. * * *

"The advantage of having the total printed in a distinguishing color from amounts or items of which it is composed will be readily appreciated. In machines of this character with which I am familiar the total is printed in the same color as the items, and there is nothing to distinguish the total from the items except perhaps a space. In the construction I have described herein the operator is not required to perform any other than the usual operation of operating the total-key, which total-key, when operated automatically, effects a change in the inking device for the type, so that the total when struck will be printed in a color different from that employed with respect to the printing of the different items."

Here the different colored ribbons are automatically shifted laterally, and all the operator has to do is to press the total key. This is also done in the Baird patent of 1904, No. 759,848, "ribbon mechanism for calculating machines." The two-colored ribbon and shifting devices were old in typewriters. But Dey & Dey were not the first to introduce the two-colored ribbons into a time-recorder. In the Connell patent of February 26, 1895, No. 534,858, for "workman's time-recorder," we find:

"Back of the strips, 6, and in front of the printing surface, 4a, are ink ribbons, 9 and 10, to give impressions of different colors, say black and red. These ink ribbons are well shown in Fig. 7, and are supported by a vertical rod or bar, 11, having a lower crosshead, 12, and an upper crosshead, 13, around which the ribbons pass. At one end of each ink ribbon is an elastic strip, 14, which keeps the ink ribbons under sufficient tension. The upper end of the rod, 11, is supported in a sliding plate, 15, having slot and pin connection, 16, with the clock frame, and which is adapted to be moved by a lever, 17, pivoted at 18.

"By shifting the ink ribbon supports through means of the lever, either ink ribbon may be brought in front of the slots or openings, 6, of the plate, 4, so that either color may be printed upon the surface 4a."

It is said by plaintiff's expert that this was inoperative, but I do not find it so. Whether the ribbon is long or short is immaterial;

when worn out another is substituted, and this is the case with any colored ribbon in any machine.

The two ribbons of different colors and the means for shifting them were claimed. At the will of the workman he could have printed forenoon records in one color and afternoon records in another, or regular time in one color and irregular time in another color.

The prior art, and I have not gone into it extensively, shows that Dey & Dey were far from pioneers. They were, so far as I have discovered, the first to actually record the time by a time-recorder in two different colors, one class of time in one color and the other class of time in another color, by automatic time-controlled means adapted to cause the impressions recording the time and made by the printing mechanism to appear in one color during one predetermined period of time and in another color during another predetermined period of time; but they were not the first to print or record time, by a time-recorder, in two different colors, thereby distinguishing one class of time from another, and they were not the first to distinguish the record of one class of time from the record of another class of time by a mark or symbol printed or impressed on the recording surface in connection with the time record or entry by automatic time-controlled means. The claims of the patent in suit in issue here must be limited by the prior art and also by their self-imposed limitations, and, so limited and construed, the defendant does not infringe.

The defendant's time-recorders, alleged to infringe, are fully operative and perform every function of the recorder, even to imprinting on the record sheet or recording surface the extra mark which distinguishes irregular time from regular time, when the ordinary single-colored ribbon only is used. As this extra symbol makes its impression by the side of the time record only, and at the same instant of time, if we substitute a two-colored ribbon, having a narrow margin of red, for the single-colored ribbon, and so insert it that the red margin comes opposite this extra symbol only and the other part of the ribbon comes opposite the type wheel, when the workman operates the handle or lever of the recorder to record his time, the time type will strike the one color and record the time in that color, and the extra symbol will strike the red margin of the ribbon and make its impression in red. It follows, on complainant's contention, that time-recorders which concededly do not infringe the claims in suit when used with a one-colored ribbon do infringe when used with a two-colored ribbon. Thus under complainant's contention, a noninfringing time-recorder, is converted into an infringing machine by putting into it and using with it a fugitive element, one which is frequently wearing out and being changed, if such element be a two-colored ribbon. It seems to me that this is, in substance, a contention that complainant's invention resides in putting a two-colored ribbon into a time-recorder and so modifying the mechanism that irregular time shall be printed with the red portion and regular time with the other portion. If this be so, defendant does not infringe. Defendant does not record time in red, and has not so modified or changed the mechanism of its recorder. Can it be possible that complainant, by the claims in issue, in view of the prior art, has obtained such a monopoly

that he can enjoin the world from using a two-colored ribbon, old in the time-recorder art, in a time-recorder which does not infringe unless it be when this old element is substituted for the single-colored ribbon? Can this be true in a case like this, when the claims alleged to be infringed demand that the record of the time itself be printed or impressed in such different colors as to cause the records of different classes of time to appear in different colors, and where the defendant's machines with the two-colored ribbon do not do that, but only do what they did before, indicate one class by a symbol, adding color to the impression made by the extra symbol used to designate a class of records, thereby making the designation the more plain and emphatic? It seems to me that this would be granting a monopoly of the use of a color in the time-recorder art; that it would be an unwarranted extension of the claims and monopoly granted thereby. It is evident that the conception was to introduce a two-colored ribbon into a time-recorder; actually print or record irregular time in one color and regular time in another color so as readily to distinguish the one class from the other class; to have this done by the workman himself as he presses the handle or lever to record his time; and in providing means so to do. But as all this contemplated the necessity of making a change in mechanism and providing additional mechanism, and the complainant's patent proceeds along the lines of providing means to shift the ribbon laterally so as to bring first the one-colored portion before the printing type and then the other, so as to have all the record of time itself printed from the same type but in different colors, means, including a controller positioned by clockwork mechanism, a lever moved by the controller and by the hand lever, and means for locking the controller and releasing the same at the proper moment, all of which are present in complainant's machine, but absent in defendant's; who has no equivalent, as he has no use for them, I cannot find infringement. And I repeat it is not infringement to accomplish the same general ultimate result by substantially different means operating in a substantially different way.

There will be a decree dismissing the bill with costs.