**NATIONAL BATTERY CO. et al. v. WESTERN MOLDED PRODUCTS CO.**

**No. 884–B H.**

District Court, S. D. California, Central Division.

July 23, 1941.

Naylor & Lassagne, of San Francisco, Cal., for plaintiffs.

Lyon & Lyon and R. E. Caughey, all of Los Angeles, Cal., for defendant.

HARRISON, District Judge.

This is an action based on alleged infringement of Patent No. 2,098,478, issued November 9, 1937, upon application filed January 7, 1935, covering a battery container. The issues of invalidity and noninfringement have been raised by the answer.

The patent contains two claims as follows:

"1. The combination with a molded storage battery container formed with a recess in its outer surface, of a name plate formed from molded, acid-resistant composition having the appearance of an integral part of said container and a coefficient of expansion approximately equal to that of said container, said plate fitting snugly in said recess and being securely bonded to the container wall in said recess.

"2. The combination with a storage battery container of molded composition formed with a recess in its outer surface, of a plate of molded composition formed with a legend thereon in bas-relief fitting in said recess and having the appearance of an integral part of said container, the depth of said recess being such that marginal portions of said container afford a guard for said plate and an adhesive securing said plate in said recess."

The patent is intended to cover a means of affixing a wafer or plaque, with the trade name or trade mark embossed or molded thereon to a regulation battery container. Primarily the patent consists of two parts:

1st. A regulation battery box with a recess on the side thereof.

2nd. A disk or plaque of the same size as the recess in the battery container and made of the same material as the container; the disk or plaque having embedded thereon, either by molding or embossing a trade mark or a trade name. The disk or plaque having the appearance of being an integral part of the container, when it is snugly fitted into the recess.

The claims emphasize the fact that the disk or plaque (called a name plate in the claims) shall be made of an acid resistant material and further that it shall have a coefficient of expansion approximately equal to that of the container.

The disk or plaque is affixed to the container by an interlocking means or by an adhesive.

The accused device differs from the patent in the following respects:

1. A raised ring is substituted for the recess in the container.

2. The plaque or disk does not fit snugly.

3. The plaque or disk when affixed extends above the edges of the raised ring.

The patent in suit is the outgrowth of the necessities of competition. Battery containers are usually molded in one piece of hard rubber or other such composition, and such containers are molded in one piece. It was old in the practice to mold an indentation in the side of the box as a receptacle for the receiving of various kinds of labels whereby trade marks or trade names were affixed to the containers. The evidence discloses the use of several different methods of branding containers. Originally paper labels were pasted into the receptacle, then followed the widespread use of decalcomania labels. Evidence was also introduced disclosing the use of a metal disk or plaque. Then something happened in the industry. Nationally advertised concerns adopted the practice of molding into the container their trade name or trade mark. Through widespread advertising the ultimate user looked upon battery containers with the trade names molded thereon as a symbol of quality, which naturally created a demand for such containers. This placed the small dealers at a disadvantage. Consequently, these smaller dealers who were selling batteries under their own name, demanded that their manufacturers furnish battery containers with their trade mark or trade name molded into such containers. This demand placed a heavy burden upon the manufacturers, due to the cost incident thereto. The industry furnishing batteries to these smaller dealers or distributors followed the unhealthy practice of anticipating their customers' needs, without any definite commitment. As a result, the manufacturers were required to carry heavy inventories of battery containers and if the size of the containers happened to be altered or the customer failed to purchase as many batteries as had been anticipated, the manufacturer had to bear such loss.

To overcome these losses and to reduce their inventories, the plaintiff, through one of its employees, devised the means incorporated in the aforesaid patent for the purpose of simulating the battery containers of the nationally advertised concerns. In other words, this inventor conceived the idea of so labeling battery·containers with a type of label that when affixed, the label would have the appearance of being an integral part of the container. An idea is not patentable. Rubber Tip Pencil Co. v. Howard, 20 Wall. 498, 22 L. Ed. 410. Consequently, we must examine the means whereby the idea was translated into actual use. We first have the combination of a recess and a label or name plate. Both are admittedly old. It requires no ingenuity to discover that a label and container made of the same material as the container would have equal coefficients of expansions, and that both would be equally acid resistant. The only advance, if any, would be that the label, when affixed, would have the appearance of being an integral part of the container. No claim is predicated on the means of adhesion.

The defendant has pleaded many patents as anticipating the patent in suit, some of which were considered by the Patent Office. Generally speaking, they refer to different uses of inlays. Inlays are generally used to produce contrasts in color, while the one in suit is an inlay of the same color. But it appears to me that the patent in suit merely teaches the use of the common place method of inlaying a piece of material on a trade mark or trade name into the side of a container of like material. I see no difference in principle in the inlaying of a label into the side of a battery container, than that used in the inlaying of the floor covering in my chambers. It is common practice in the wood art to replace defects in wood by inlaying another piece of wood of the same kind in order that the ordinary observer may never know that such defect had ever existed. The process or art of inlaying is old and the patent in suit teaches nothing new in the art.

Campbell Patent No. 2,061,649, discloses the use of a molded disk of the same material as the body of the vent plug and is inserted in a recess in the said vent plug.

The patent also utilizes the process of inlaying.

■ In view of my conclusions hereinafter expressed it is considered unnecessary to discuss the issue of infringement. I have long been of the opinion that when a court is convinced beyond a reasonable doubt by clear and cogent evidence that a patent is invalid, it should not hesitate to so hold and thus not retard the return of an apparent monopoly to the public domain.

■ I believe the patent in suit is invalid for three reasons:

1st. The patent in suit involves a mere substitution of material, from which no new or unexpected result flowed. I cannot see wherein the substitution of a paper or a metal label by material similar to the material used in the container rises to the dignity of invention. Therefore, I consider that citations like George Frost Co. et al. v. Cohn et al., 2 Cir., 119 F. 505; Allen Filter Co. v. Starr Metal Mfg. Co. et al., 3 Cir., 40 F.2d 252; Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 23 L. Ed. 952, and others are not applicable to the patent in suit.

24 Words and Phrases, Perm.Ed., p. 5, defines a label as: "According to standard lexicographers, the term includes a slip or tag of paper, or other material, bearing the description in the form of a word or words, name, monogram, letter, scroll, or trademark indicating the character, origin, or destination of the article to which it is attached."

■ When the containers are molded out of an asphalt composition, the disk or plaque is made of tar paper, with the necessary lettering embossed thereon. The evidence indicates that generally the containers are of such composition, consequently, the practical use of the patent in suit results in the use of tar paper instead of the ordinary white paper. Irrespective of the material used, the plaque or disk are in fact a means of labeling battery containers. A mere substitution of materials is not patentable. Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 8 Cir., 118 F.2d 600; Hotchkiss et al. v. Greenwood, 11 How. 248, 13 L.Ed. 683; Brown v. District of Columbia, 130 U.S. 87, 9 S.Ct. 437, 32 L.Ed. 863. Neither does the patent in suit come within the exception to the rule because it does not involve a new mode of construction, nor does it develop new properties and uses of the battery container. The affixing of this plaque, label or disk, of course, adds nothing to the utility or function of the container. The container would serve the purpose for which it was made, if it had no trade mark or trade name on it whatsoever.

■ 2d. A correct analysis of the invention discloses, that instead of making the container in one part, the inventor proposes to make it in two parts. The making in two parts what was formerly made in one, involves no more than the exercise of mechanical skill. Walker on Patents, Deller's Edition, Vol. 1, P. 196, and cases therein cited. In the recent case of In re Helmond, Cust. & Pat.App., 118 F.2d 574, the following language is used: "The examiner held the general rule, that there is no invention in a member formed in one piece instead of several secured together, where no change in function or operation is involved, * * *."

■ 3rd. The patent lacks utility. The purpose of the patent is to simulate a molded one-piece container. It is so simulated for the purpose of misleading the buying public into believing they are purchasing a container in one piece, when, in fact, it is in two parts. The container is so camouflaged for the further purpose of causing the buying public to believe they are buying containers with the trade mark or trade name molded thereon, as the public, through national advertising has been educated to believe that containers so constructed contain batteries of a recognized high quality. Public policy precludes the recognition of this patent. I believe the language found in Scott & Williams, Inc., v. Aristo Hosiery Co., 2 Cir., 7 F.2d 1003, 1004, is peculiarly applicable to the case at bar, when the court stated:

"But such accomplishment does not create a new useful discovery or invention, and it was not the intention of Congress to grant protection to those who confer no other benefit to the public than an opportunity for making the article more salable. Rickard v. Du Bon [2 Cir.] 103 F. 868, 43 C.C.A. 360; Kilbourn Knitting Machine Co. v. Liveright [3 Cir.] 165 F. 902, 91 C.C.A. 580.

* * * * *

"The presence or absence of narrowing marks that invariably accompanied the genuine full-fashioned stocking was instantly revealed when the skirt slipped well

above the ankle. Mere novelty or attractiveness of shape or form by imitation only does not present that technical ingenuity to rise to patentable invention. Harmon Paper Co. v. Prager [2 Cir.] 287 F. 841. What was accomplished here was a concept of imitation. It makes little difference how the imitation is produced. There is no exposition of means. What the patentee did here was to, by imitation, give his stockings the appearance of full-fashioned stockings, and for that he claims a monopoly. To produce an imitative result is not patentable. There is lacking the means of producing the result. Simplex [Lithograph Co.] v. Renfrew [Mfg. Co.], 250 F. 863, 163 C.C.A. 177. If the means were at hand for producing the imitation, there was no field left for invention so far as the imitated article itself was concerned. Rubber Tip Pencil Co. v. Howard, 20 Wall. 498, 22 L.Ed. 410; Electric Vacuum Cleaner Co. v. Jorgensen [2 Cir.] 290 F. 184; Thomas A. Edison, Inc., v. Waterbury Battery Co. [2 Cir.] 287 F. 320; Way v. McClarin (C.C.) 91 F. 663."

The defendant shall, within ten days, prepare the necessary findings and conclusions of law for my signature.